# R. Taylor Middleton, Appellant, v. Geo. S. Thompson et al.

*Brokers—Commissions—Contract.*

A broker employed to negotiate a loan is entitled to his commission when he brings to his principal a party ready and willing to make the loan. A binding contract is not essential where the party produced by the broker stands ready to perform his part of the proposal, and the failure to do so occurs through the fault or inability of the principal.

*Broker—Principal and agent—Authority of agent—Authority of agent to make representations as to title, etc.—Implied warranty—Parol evidence to vary written agreement.*

A man who proposes to sell land, or to borrow money upon mortgage on it, impliedly warrants that he has a marketable title for the purpose desired, and, in the absence of specific instructions to the contrary, his employment of a broker is sufficient authority to the latter to make representations and negotiations on that basis. And such authority is not negatived by merely leaving unanswered questions which have been put by the broker on a blank furnished by him for the purpose of obtaining information.

A broker employed to negotiate a loan on a mortgage procured a party to make the loan. In the memorandum of agreement between the broker and the proposed lender was a provision that the borrower should pay the state tax. This was contrary to the borrower's instructions. In an action by the broker to recover his commission he offered to show by the lender that the provision as to the payment of the state tax was a mistake through the use of an old printed form, and that it was no part of the actual contract. *Held*, that the evidence should have been admitted.

In the above case in the application made by the broker to the lender it was stated that a "full brief of title and searches, with opinion of counsel, will be required." On the memorandum of acceptance were the words "Opinion of J. C. Stillwell, Esq." *Held* (1) that it was within the implied authority of the broker to agree upon behalf of his principal to submit the title to opinion of counsel; (2) that the name of a particular counsel upon the acceptance amounted to nothing more than a suggestion that his opinion should be obtained in the first instance, and did not make him final arbiter in the matter; (3) even if such counsel should be the final arbiter, the question would still be for the jury whether the objections by the counsel were reasonable or not. If they were, plaintiff would not have exceeded his authority; if they were not, he would not have produced a willing customer.

Argued April 5, 1894. Appeal, No. 337, Jan. T., 1894, by plaintiff, from judgment of C. P. No. 1, Phila. Co., March T.,

1891, No. 79, on verdict for plaintiff.   Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ.   Reversed.

Assumpsit to recover commissions for negotiating loan.

At the trial before BREGY, J., it appeared that, on Sept. 23, 1890, Archibald Campbell, of the firm of Thompson & Campbell, defendants, came to the office of plaintiff, who is a conveyancer, real estate and mortgage broker, and made an application to him to secure a loan of $14,000 upon several pieces of real estate on Germantown avenue, agreeing to pay the plaintiff a commission of two per cent for securing the same.   The application was in writing as follows:

"I, Archibald Campbell, do hereby authorize R. Taylor Middleton, broker, No. 703 Walnut street, Philadelphia, to obtain for me the loan of fourteen thousand dollars, for the period of five years, at the rate of 6 per centum per annum, payable semi-annually, mortgaging as security for the same the property herein described; and I agree to pay the said R. Taylor Middleton two per cent of the amount of loan as commission for securing the same.

"DESCRIPTION.

"(Give township and county and distance and direction from nearest R. R. station.)

"Location, No. 1, 1030 Germantown avenue, and No. 2, Haydock avenue and Germantown avenue, on opposite side of street from first property.

"Dimensions of ground, 84 feet on Germantown avenue, 91 feet 2¾ in. on New Market street.  Second lot, 48 feet on Germantown ave. and a ground rent of $70.00 per year on lot adjoining.

"Dimensions and materials of buildings, brick on No. 1 lot, all covered with building, 3 and 5 stories; No. 2 lot, 1 story smith shop, and adjoining lot ground rent with 4 story building.

"Purposes of use, machine work.

"Value of ground, $        .   Value of buildings, $39,000.

"When finished,        .   Annual rent, $        .   Occupied by owners.

"How long have you owned it?           What did you pay for it?

" Insured for $15,000 in          company for the term of mortgage.

" In whom is the title to the property?

" P. O. address of owner, 1030 Germantown avenue.

" What incumbrances are now on the property to be paid off, and by whom held? Is the title perfect? Fourteen thousand dollars to be paid off.

" Are taxes paid in full up to current year? Yes.

" Whose note or bond will be given as debtor? Archibald Campbell and George S. Thompson.

" Assessed for taxation at $    . One property $9,000. One $2,500.

         " Dated at Phila. the 23d day of Sept., 1890.

                        (Name.)

Witness present:                THOMPSON & CAMPBELL,
SAML. MIDDLETON.                per ARCHIBALD CAMPBELL."

Plaintiff thereupon applied to the Fidelity Insurance Trust and Safe Deposit Company, and that company accepted the loan as trustee for Helen M. Stillwell. The following is a copy of the application made by Middleton to said company:

                "PHILADELPHIA, Sept. 24, 1890.

" Application is hereby made to The Fidelity Insurance, Trust and Safe Deposit Company, for loan on mortgage of $14,000 for five years, at six per cent interest.

| Mortgagor | George S. Thompson and Archibald Campbell, firm of Thompson and Campbell. |

| Owner of premises. | do |
| Address of payor. | No. 1030 Germantown Ave. |

|  | (1) | (2) |
| --- | --- | --- |
| Location and size of Lot. | No. 1030 Germantown Ave. 84 ft. on Germantown Ave. 91 2¾ on New Market St. rear lines 44′ 11″ and 17′ 6″. | Corner of Haydock St. and Germantown Ave. opposite. 48 ft. on Germantown Ave. 34 ft. 8 in. on Haydock St. × 98 ft. 5 × 92 ft. 8 in. |

| | | |
|---|---|---|
| Description of Buildings and when built. | 3 and 5 story brick buildings. Cover 1st ment. lot. One story Smith shop on 2d lot. | Lot adjoining 28 × 92′ 8″. G. R. $70 addit. collat. This lot covered by 4 story bldng. |
| How occupied. | Maf'g Machinery, etc. | |
| Annual rental. | Occupied by owners. | |
| Assessed value. Estimated gross value. | $39,000. | |
| Present incumbrances. | $14,000 to be paid off to settle an estate. | |
| Perpetual insurance, and in what company, | $15,000. | |
| Repairs or alterations within six months. | | |
| Street improvements and nuisances removed within six months. | | |

"NOTE.—Full brief of title and searches, with opinion of counsel, will be required. Insurance assigned as collateral security, covenant entered into to pay state tax, and, if an old mortgage, a certificate of no set-off to be furnished. Papers to be complete within two weeks of date of acceptance; otherwise interest to be paid for period of delay.

"The mortgage, if taken, must be a first lien upon the premises.

"Application made by R. TAYLOR MIDDLETON,
                    "No. 703 Walnut St., Phila."

Indorsed: "Application to the Fidelity Ins. Trust and Safe Deposit Co. for $14,000. 1030 Germantown ave. Exd. & Aprd. R. A. W. Oct. 10, 90 App. S. A. C. Pr. Accepted

for The Fidelity Insurance Trust and Safe Deposit Company. Trustees for Helen M. Stillwell, under the will of William Lang, deceased. Opinion of J. C. Stillwell, Esq. 302. Oct. 13, 1890."

Plaintiff then took out guaranteed general searches from The Land Title and Trust Company against the premises upon which the money was to be loaned. The searches disclosed the fact that there were three mortgages existing against the property, one of $8,000, one of $6,000 and one of $3,000, and also that there was an irredeemable ground rent against a portion of the property. Middleton sent for Campbell to come to his office and explained the nature of these incumbrances; Campbell then went with plaintiff to The Commonwealth Title Company to get that company to insure against this ground rent, and they together ordered the said company to issue a policy of insurance. Plaintiff afterwards made a compromise with the company for this insurance at twenty-five dollars instead of the fifty dollars originally charged. Upon further investigation plaintiff discovered that the property upon which the loan was to be made, had been the property of a firm in which one Kreider had held an interest, and also one Turnbull, that Kreider and Turnbull were both dead and that their interests had never been conveyed to the surviving members of the firm of Campbell and Thompson. Plaintiff then claimed that he was entitled to his commission, but proposed to do the necessary conveyance to straighten out the matter, the only additional costs to defendant being his charges for the preparation of the additional papers. Plaintiff proceeded to draw quitclaim deeds, one from the Kreider heirs, which after considerable trouble was duly executed and acknowledged, and one was also drawn from the Turnbull heirs. This latter was never executed, owing to the refusal of one of the heirs to sign the same, and the delay that followed upon this caused The Fidelity Company to withdraw their acceptance of the loan and the matter fell through.

The plaintiff offered in evidence the following letter, dated Phila., Oct. 10, 1892, signed by R. A. Wilkinson, real estate officer of the Fidelity Co.:

"Referring to the application dated September 24, 1890, made by you for Messrs. Thompson & Campbell for the loan

on mortgage of $14,000 for five years, on premises No. 1030 Germantown avenue, we beg to state that the application was accepted by us at the rate of six per cent interest.   It is true that the form on which the application was made provided that a covenant should be entered into to pay state tax.   This form was the one in use with this company before the passage of the act providing against the covenant on the part of the borrower to .pay state tax as well as interest.   It was understood by us when the application was made that the rate being at six per cent the mortgage would be drawn at that rate flat, without any provision for the payment. of tax by the borrower. This mortgage was entered on our books as accepted at six per cent."

Counsel for defendant having admitted that Mr. Wilkinson would testify to the facts contained in said letter, but reserving his right to object to the same as incompetent, said letter was objected to for the reason that it was incompetent to vary or alter the terms of the written contract between Mr. Middleton and the Fidelity Co.   Objection sustained.   Exception for plaintiff. [1]

The court instructed the jury that [plaintiff was not entitled to recover commissions,] [2] but only for the expenses which he had paid, and for his services in drawing the quitclaim deeds.

Verdict and judgment for plaintiff for $90.31.

*Errors assigned* were (1) ruling; (2) instructions in brackets; quoting bill of exceptions and instructions.

*William M. Stewart, Jr., John M. Gest* and *John Sparhawk, Jr.,* with him, for appellant.—Parol evidence is admissible to show that a particular clause was inserted in an agreement by mistake: Hamilton v. Asslin, 14 S. & R. 448; Mehaffy v. Share, 2 P. & W. 361; Finney's Ap., 59 Pa. 398.

Here is an attempt to enforce the rule against the admission of parol evidence at the instance of a person who is not a party to the instrument itself, where the parties themselves are agreed upon what was intended by them and where the construction contended for by such third party would make the agreement unlawful.   It is submitted that this rule will not

be so enforced at the instance of a third party: Greenl. Ev. 3279; Rice's Ev. 58; Brown on Parol Ev. 326; Krider v. Lafferty, 1 Whart. 302.

Middleton was entitled to his commissions when he procured a client able and willing to lend: Sweeney v. Oil & Gas Co., 130 Pa. 193; Patterson v. McCarty, 29 Pitts. L. J. 455; Workman v. Cullberg, 12 W. N. 189; Market Co. v. Jackson, 102 Pa. 269; Middleton v. Yerkes, 2 Pa. C. C. R. 610; Vinton v. Baldwin, 88 Ind. 104; Edwards on Factors and Brokers, § 113; Doty v. Miller, 43 Barb. 529; Green v. Lucas, 33 Law Times, 584; Hussey v. Horne Payne, L. R. 4 Ap. Cas. 311; Eddie v. Addison, 52 L. J. Ch. 30; Gordon v. Mahoney, 13 Irish Eq. 404.

*James Collins Jones, Lewin W. Barringer* with him, for appellee.—The pivotal phrase in the contract is " to obtain the loan," etc. Plaintiff was employed by· defendants " to obtain a loan." Does this mean that he was actually employed to get the money into the possession of defendants? Or that he was simply to make a contract for defendants by which some one should undertake to make the loan to them? It is submitted that the former meaning is the proper one to place upon this phrase.

In Middleton v. Yerkes, 2 Pa. C. C. R. 610, the broker was permitted to recover not on the ground that he had fully performed his part of the contract, but on the ground that the conduct of defendant was such as to excuse full performance on plaintiff's part.

· In Vinton v. Baldwin, 88 Ind. 104, the broker was likewise clearly excused from the necessity of showing full performance by the conduct of the applicant for the loan.

In Doty v. Miller, 43 Barb. 529, plaintiff was employed to sell what was represented by defendant to be a first mortgage. Plaintiff found a person who was willing to buy the mortgage if it was as represented, and who subsequently refused to take it, because he found upon examination that there were prior incumbrances on the property covered by the mortgage.

When a broker is employed to sell property he must show, before he can recover his commissions, that he has caused to be made a valid, enforcible contract either between his principal

and the vendee directly, or between himself, acting for his principal, and the vendee, and if the contract is made by him as agent he must show that it was made in accordance with the powers conferred on him by his principal as stated: Keys v. Johnson, 68 Pa. 42; Clendon v. Pancoast, 75 Pa. 213; Michener v. Beirn, 27 W. N. 341; Peirce v. Truitt, 21 W. N. 569; Hartley v. Anderson, 150 Pa. 391; Sweeney v. Oil & Gas Co., 130 Pa. 193; Nelson v. Von Bonnhorst, 29 Pa. 352; Singerly v. Thayer, 108 Pa. 291; Crasto v. White, 52 Hun, 473.

*Wm. M. Stewart, Jr., John M. Gest* and *John Sparhawk, Jr.,* with him, for appellant, in reply.—In Crasto v. White, 52 Hun, 473, the controlling fact was that defendant had been in no default and the lender was in default.

In addition to the case of Green v. Lucas, 33 Law Times R. 584, appellants rely upon the following additional authorities: Phister v. Gove, 48 Mo. Ap. 455; Peet v. Sherwood, 43 Minn. 447; Holly v. Gosling, 3 E. D. Sm. 262.

OPINION BY MR. JUSTICE MITCHELL, July 12, 1894:

Brokers, says SHARSWOOD, J., in Keys v. Johnson, 68 Pa. 42, " are persons whose business it is to bring buyer and seller together. They need have nothing to do with the negotiation of the bargain." This is said generally of brokers, though the words used are " buyer and seller," and the case was one of the sale of real estate. There is no good reason why the same principle should not apply to a broker negotiating a loan as to one negotiating a sale. The basis of his right to compensation in either case is the same, his bringing to his principal a party able and willing to carry out the desired transaction. It is said in some of the cases that there must be shown a contract binding on the party produced. But this is not essential. Keys v. Johnson decides that the principal cannot take the matter out of the broker's hands and thus deprive him of his right to the commissions though he had as yet made no contract. In Clendenon v. Pancoast, 75 Pa. 213, no binding contract appears, and in Sweeney v. Oil & Gas Co., 130 Pa. 193, it affirmatively appears that no such contract was made. So in Reed's Exr. v. Reed, 82 Pa. 426, there was no contract, because while the expected purchaser was considering the matter under

a time option allowed for that purpose, the principal sold to another party, and it was held that the broker had earned his commissions. These cases show clearly that a binding contract is not essential where the party produced by the broker stands ready to perform his part of the proposal, and the failure to do so occurs through the fault or inability of the principal.

We are therefore of opinion that there is no ground for a distinction in the extent of the duty of a broker to effect a loan and one to effect a sale. In the former case as in the latter, as said by Baron BRAMWELL in the closely analogous case of Green v. Lucas, 33 Law Times Reports, 584, " the word ' procure ' means to procure the lender and not the money, and the contract was completed, so far as the plaintiff was concerned, when he had procured a person who was ready and willing to advance the money."

Did the plaintiff complete his part of the contract in the sense so explained? He found a lender whose ability is not questioned, and whose willingness must be tested by the grounds of final refusal. If these were the fault of the defendants, then the failure to obtain the money was no defence to the plaintiff's claim.

A man who proposes to sell land, or to borrow money upon mortgage on it, impliedly warrants that he has a marketable title for the purpose desired, and, in the absence of specific instructions to the contrary, his employment of a broker is sufficient authority to the latter to make representations and negotiations on that basis. And such authority is not negatived by merely leaving unanswered questions which have been put by the broker on a blank furnished by him for the purpose of obtaining information.

It is objected on the part of defendants that plaintiff's contract with the Fidelity Company was not sufficient in that it was not binding in form, and it was not in accordance with the agreement between plaintiff and defendants as to the loan. The necessity for a binding contract has already been considered. The objections under the second head are, first, that plaintiff's contract with the Fidelity Company provided that defendants should pay the state tax in addition to the agreed interest; secondly, that the contract stipulated that the proposed mortgage should be a first lien, while defendants had made no representa-

tions as to incumbrances ; and thirdly, that it subjected the title to the opinion of special counsel, whose rejection of it would terminate the agreement without remedy to the defendants.

The first objection was not well founded in fact.   It is true that a provision for the payment of the tax appears in the memorandum of agreement, but plaintiff offered to prove by the other party to it, the Fidelity Company's officer, that it was in there by mistake, through the use of a printed form, and that it was no part of the actual contract.   This proof should have been admitted.   Of course the officer's mere letter was not of the requisite grade of evidence, except by the agreement of counsel that it should represent what the officer would testify to if examined in person.   Under such agreement it should have been admitted.

The second objection would ordinarily raise a question of fact for the jury.   As already said an owner proposing to borrow on mortgage and employing a broker to find a lender of the money, impliedly warrants that his title is marketable for mortgage purposes, and that may require certain conditions as to liens, according to the custom of business.   In the present case the point is conceded by appellee to be immaterial, as the stipulation for priority of the mortgage was modified by the Fidelity Company, and as so modified was complied with.   It was not therefore a cause of the failure of the loan.

The third objection also raises a question of fact.   The application by plaintiff to the Fidelity Company for the loan stated that " full brief of title and searches, with opinion of counsel, will be required."   This was within the implied authority of plaintiff.   Any owner, as already said, was bound to know that a loan would not in the ordinary course of business be made on mortgage without an examination of title, and finding it marketable for mortgage purposes, and this was a matter for the opinion of counsel.   The brief memorandum of acceptance by the Fidelity Company contained the words, " Opinion of J. C. Stillwell, Esq."   This does not necessarily mean anything more than the suggestion of Mr. Stillwell as the counsel whose opinion should be obtained in the first instance. There is no provision that he is to be the final arbiter in the matter, and such stipulation will not be understood as intended without express words to support it.   But even if he were

made the arbiter, the question whether the plaintiff went outside of his authority in submitting the matter to him would depend on the nature of the objections raised against the title. The plaintiff had authority to stipulate that. the title should be marketable in the opinion of counsel. If Mr. Stillwell's opinion required nothing more, then plaintiff did not exceed his authority. If, on the other hand, Mr. Stillwell through over caution or excessive particularity raised objections not sufficient to destroy the marketability of the title in the general opinion of the profession, and the refusal of the Fidelity Company to lend was based on those objections, then the plaintiff would be held to have failed to produce a willing customer within the requirements of his contract with defendants. But these questions would be for the jury.

From the foregoing it follows that the defendants failed to raise any defence which was sufficient to prevent the plaintiff's recovery as a conclusion of law, or to justify a binding direction that he could not recover his commissions. He was entitled to go to the jury on the question. whether he had completed his agreement by procuring a party able and willing to make the loan, and if so whether the loan finally failed through no fault of the plaintiff but through defects in the title of defendants which were sufficient in the usual course of such business to justify the proposed lender in declining to go on with the transaction.

Judgment reversed and a venire de novo awarded.