At the corner of Springfield avenue and South Thirteenth street, Newark, the Grunt family conducts a ladder and scaffold business. The business is organized in three parts — a retail store where small ladders, as well as paints, are sold; a wholesale or special order department for extension ladders and scaffolds for painting contractors, and a shop in which ladders are manufactured. Three corporations are or were *Page 100 
used as instrumentalities for the more convenient handling of the family enterprise — S. Grunt, Inc., for the retail end, Newark Ladder and Bracket Sales Co. for the wholesale department, and Newark Ladder and Bracket Manufacturing Co. for making the ladders. Mrs. Esther Grunt owns the land where the business is carried on and seems to be the head of the enterprise. Her husband, Samuel, is primarily in charge of sales, a son, Reuben, runs the factory; other sons also take part in the business.
On October 20th, 1938, the employes in the manufacturing plant went on strike and began picketing. October 25th, S. Grunt, Inc., and the Sales Company filed a bill and obtained a restraint against picketing. They obtained this restraint by persuading the court that the business in which the strikers had been employed — that is, the making of ladders — had been discontinued. On November 7th, the three companies entered into agreements with the union and the strikers reciting that the Manufacturing Company had discontinued business but might be desirous of recommencing operations in the future, and in such event it agreed to employ union men and pay union wages, and the union agreed that it would not picket or engage in strike activities against the three companies. The bill of complaint was dismissed by consent.
Meanwhile, on October 29th, Mrs. Grunt, in a proceeding against the Manufacturing Company, obtained from the first district court of Newark an order for possession of the ladder shop, and subsequently, according to her affidavit, she sold the machinery and equipment owned by the Manufacturing Company and, under a constable's sale, purchased same. I take it that she had a chattel mortgage on the equipment. One Samuel Weinstein had been the factory foreman. On November 14th, the Sales Company entered into a contract with him "as an independent contractor" for the manufacture of ladders in the shop formerly occupied by the Manufacturing Company. The same day, Mrs. Grunt leased him the shop from month to month. He then started to work with two or three men. All the equipment was owned by Mrs. *Page 101 
Grunt, the materials were supplied by the Sales Company, and all the finished product was delivered to the Sales Company or to S. Grunt, Inc. Weinstein and his men were paid for their labor on a piecework basis. Reuben Grunt and other members of the family still gave directions and everything went on much the same as when the Manufacturing Company was functioning.
Toward the end of November, when the union learned of this situation, they felt, not unreasonably, that they had been tricked and resumed picketing. On December 2d, S. Grunt, Inc., the Sales Company and Mrs. Grunt, filed a new bill and on notice (chancery rule 212) applied for an order to show cause withinterim restraint. An order to show cause was granted but theinterim restraint was refused. Before the return day, the parties were gathered in conference by the Newark Labor Relations Board, and a settlement was apparently reached December 9th. The defendants were given to understand that manufacturing operations would be removed from the South Thirteenth street premises to other property of Mrs. Grunt, half a mile away on West Kinney street; that the strikers would there, on December 19th, be re-engaged at increased wages. Soon, however, the defendants were disillusioned. The strikers were told in effect, when they reported for work, that they would have to resign from the union if they wanted to get back their jobs. They refused. Manufacturing at South Thirteenth street has been discontinued but is being carried on on a small scale at the West Kinney street shop, although the machinery is not yet all set up. Mrs. Grunt says that she is now the manufacturer and that Weinstein has been demoted from the position of independent contractor to that of her foreman. The defendants are picketing at South Thirteenth street. In this situation, the order to show cause has been brought on for argument.
The first point made by complainants is that they are innocent bystanders in this dispute; that the strikers were never their employes but worked for a third party, the Newark Ladder and Bracket Manufacturing Company, now dissolved, *Page 102 
and hence defendants have no right to picket complainants' places of business. The same contention was overruled upon the application for an interim restraint, but will be considered anew, unprejudiced by the earlier determination.Eastwood-Nealley Corp. v. International Association, c.,District 47, 124 N.J. Eq. 274.
I find from the affidavits that the two complainant corporations and the Manufacturing Company were used as mere instrumentalities of the Grunt family for the more convenient handling of the family business. The business, though conducted in three divisions, was a unit. Of course, on final hearing, it may be shown that the Manufacturing Company was an independent enterprise; but it does not now so appear.
"The doctrine that a corporation is a legal entity existing separate and apart from the persons composing it, is a legal theory introduced for purposes of convenience and to subserve the ends of justice. The concept cannot, therefore, be extended to a point beyond its reason and policy and when invoked in support of an end subversive of this policy, will be disregarded by the courts." 13 Am. Jur. 160. See, also, 14 C.J. 59; Chicago,Milwaukee and St. Paul Railway Co. v. Minneapolis Civic, c.,Association, 247 U.S. 490; 36 S.C. 553; Gledhill v. Fisher Co., 272 Mich. 353; 262 N.W. Rep. 371; 102 A.L.R. 1042; Kendall
v. Klapperthal Co., 202 Pa. 596; 52 Atl. Rep. 92. "The separateness of the person and the corporation would, of course, be recognized if no inequitable results would follow. But where, as here, an inequitable result would follow, the two should be considered as one." D.N.E. Walter Co. v. Zuckerman, 14 Cal. 418; 6 Pac. Rep. 2d 251; 79 A.L.R. 329. "There has been a growing tendency upon the part of the courts to disregard corporate entity and to treat the stockholders as though an association of individuals when the interests of justice are to be served. Metropolitan Holding Co. v. Snyder, 79 Fed. Rep.
2d 263; 103 A.L.R. 912. These principles are fully recognized by our New Jersey cases. Stockton v. CentralRailroad Co., 50 N.J. Eq. 52, 74; Breslin v. Fries-Breslin Co.,70 N.J. Law 274, 282; Ross v. Pennsylvania *Page 103 Railroad, 106 N.J. Law 536; Havey v. Hofmann, 121 N.J. Eq. 523; 123 N.J. Eq. 589; Whitfield v. Kern, 122 N.J. Eq. 332;Rippel v. Kaplus, 124 N.J. Eq. 303. In the Whitfield Case, Mr. Justice Heher said: "In fine, the conception of a legal entity distinct from the persons composing the corporation is to be disregarded, in equity, in cases not within the reason and policy of this legal fiction." As the cases cited above disclose, the corporate fiction has been ignored most frequently in fraud cases, but also in suits of every nature where justice will thereby be advanced; for instance, in negligence cases, in fixing railroad rates, in determining the liability of a national bank stockholder, or the obligation of a guarantor, in deciding whether a mortgage bondsman is entitled to equitable relief, c. The boundaries of the doctrine are not yet clearly established, but are being staked out slowly by accumulating precedents.
I am satisfied that the separate existence of the Manufacturing Company must be disregarded in the instant case in order to do equity to defendants. This is an economic conflict; the strikers on one side, though each had a separate oral contract of employment, are a unit; and the business enterprise in which they were employed is also a unit. The strikers are justified in so considering it and picketing the complainants' places of business.
Complainants next point out that manufacturing operations have been transferred from South Thirteenth street to Kinney street, and so, they say, the strike must be considered as in progress at Kinney street only, for that is where the strikers hope to work when the conflict is done. And complainants draw the conclusion that defendants have no right to picket on South Thirteenth street. This might be so if the sole proper purpose of picketing was to persuade workmen not to take the place of the strikers in the employ of complainants. But another function of the picket "now quite generally recognized," as pointed out by Mr. Justice Case, "is to seek to influence, frequently by placards or banners carried by the picket, the public against patronizing the employer." Evening Times, c., Co. v. American, c., Guild,124 N.J. Eq. *Page 104 71, 79. The strikers "may present their cause truthfully to the public by placards, by circulars, or by speech, and their employer may do the like. According to the great weight of authority, they may appeal to friends, to customers and to the public generally, to assist them by refusing to deal with their employer." Perfect Laundry Co. v. Marsh, 120 N.J. Eq. 508
(reversed on another point, 121 N.J. Eq. 588). Unless the strikers are permitted to station pickets at the place where the ladders are sold, they are deprived of a fair and proper means of bringing their plea to the attention of the public. Goldfinger
v. Feintouch (N.Y.), 11 N.E. Rep. 2d 910. Peaceful picketing on South Thirteenth street is lawful.
Defendants have urged the doctrine of unclean hands. Though it appears that complainants have indulged in questionable shifts and devices in order to defeat the strikers, it seems to me more satisfactory to base my decision on the ground that defendants have been acting within their right. The order to show cause will be discharged, with costs, including a counsel fee.