## TRADEWELL FOODS, Inc. v. NEW YORK CREDIT MEN'S ADJUSTMENT BUREAU, Inc. et al.
### No. 125, Docket 21510.

United States Court of Appeals Second Circuit.

Submitted Jan. 3, 1950.

Decided Jan. 25, 1950.

Shereff Brothers, of New York City (Louis H. Shereff, of New York City, of counsel), for appellant Tradewell Foods, Inc.

Kent, Hazzard & Jaeger, of White Plains, N. Y. (George Beisheim, Jr., of White Plains, N. Y., of counsel), for respondent New York Credit Men's Adjustment Bureau, Inc.

Hall, Cunningham & Haywood, of New York City (C. Harold Taylor, of New York City, of counsel), for respondent County Trust Co.

Before L. HAND, Chief Judge, and SWAN and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Petitioner, Tradewell Foods, Inc., sought review by the district court of an order by a bankruptcy referee expunging its claim against the bankrupt estate of Rowe Food Stores, Inc., and now appeals from the district court's affirmance of the order. Its claim, for which it asserted priority over claims accruing prior to the commencement of proceedings, was for damages for breach of a contract to purchase the bankrupt's assets made by the bankrupt while in possession during the pendency of proceedings for an arrangement.

The bankrupt's petition for an arrangement was filed on February 24, 1947, and it was then continued as debtor in possession under Bankruptcy Act, §§ 342, 343, 11 U.S.C.A. §§ 742, 743. On August 22, 1947, the petitioner-claimant entered into a contract with the debtor and its principal officers and sole stockholders, Harry Rosenthal and Charles Wernick, to purchase all the assets of the debtor except its real estate. The sale was to be closed "simultaneously with confirmation of the second plan of arrangement." Paragraph Sixth of the contract provided that "Tradewell shall deposit for the account of the above proceeding such sums of money to the order of the Judges of the United States Dis-

trict Court, Southern District of New York, as is necessary to consummate the Plan of Arrangement up to but not exceeding the sales price hereinabove mentioned. Any additional sums of money needed to confirm the second amended Plan of Arrangement shall be personally supplied by Rosenthal and Wernick." The amount of money required to consummate the plan proved to be greater than had been anticipated, and Rosenthal and Wernick declined to put up their part of the money. When the date set for consideration of confirmation, September 11, 1947, arrived, the debtor abandoned the plan because the funds necessary for consummation were lacking, and, with its consent, was adjudged bankrupt. The deposit made by Tradewell was then returned to it by order of the referee. It proceeded to file its priority claim for damages for repudiation of the contract, the expunging of which has led to this appeal.

It is clear from the terms of the contract that the sale to Tradewell was conditioned upon the confirmation of the plan of arrangement. Thus Paragraph Second begins: "Simultaneously with confirmation of the second Plan of Arrangement, a proposed copy of which is annexed hereto, Rowe will sell to Tradewell its eight (8) stores." Paragraph Sixth specifies that the delivery of documents shall take place "simultaneously with the confirmation of the Plan of Arrangement." Paragraph Seventh provides: "All the moneys deposited as aforementioned by Tradewell shall be so deposited pursuant to an order of the Court which shall provide that in the event the second amended Plan of Arrangement is not confirmed for any reason whatsoever, said moneys shall be returned without diminution to Tradewell." Paragraph Tenth states that "the closing shall take place at confirmation of the Plan of Arrangement."

■ Since the confirmation of the plan was thus necessary to the completion of the sale to Tradewell, and since the plan was not confirmed, it would seem that the debtor's obligation to sell its assets to Tradewell was discharged. Tradewell attempts to meet this argument with an earnest contention that the debtor cannot set up its own failure to perform the condition as an excuse for its own repudiation of the contract. We agree that where a promisor is himself the cause of the failure of performance of the condition, he cannot set up such nonperformance as a defense. 3 Williston on Contracts § 677 (Rev.Ed. 1936); 17 C.J.S., Contracts, § 468b. But we do not regard the failure of performance here as attributable to the debtor corporation. The record is clear that the debtor stood ready and willing to do everything in its power to secure confirmation of the plan. The only reason the plan was not confirmed and the debtor consented to an adjudication of bankruptcy was the lack of sufficient funds to carry through the consummation of the plan and to pay off the lien creditors. The second and ninth paragraphs of the contract between it and Tradewell specified that all liens must be satisfied before the sale was closed. This required money and the consummation of the plan required money, as Tradewell well knew; indeed, the second preamble to the contract said: "Whereas, in order to consummate the Plan of Arrangement with its creditors, it is necessary for Rowe to obtain certain moneys." There is no doubt but that the lack of money effectively barred the debtor from proceeding to consummation and confirmation of the plan.

Nor can this lack of money be legally attributed to the debtor corporation. Paragraph Sixth of the contract, which we have quoted above, specified that any sums needed for confirmation above the price to be paid by Tradewell were to be "personally supplied" by Rosenthal and Wernick. It was these two who failed to fulfill their contractual obligation to provide the needed money and who thus made it impossible for the condition to be performed.

■ Petitioner accepts the argument thus far in general, but contends that the debtor corporation was also liable for failure to provide the money needed for consummation of the plan on the ground that the contract of sale was a joint obligation of the debtor and its officers. It supports this by quoting a number of provisions in the contract which specify that "Rowe, Rosenthal and Wernick" would perform

certain acts. Certainly many of the contractual obligations are joint; but the repeated use of the phrase, "Rowe, Rosenthal and Wernick" to make clear that a particular obligation is joint actually adds force to our understanding that the promise that money needed should be "personally supplied by Rosenthal and Wernick," with no mention of Rowe, was not intended to obligate the corporation. The authorities cited by the claimant are quite in accord with this interpretation in stating that "promises by two or more persons create a joint duty unless the contrary is stated." United States Printing & Lithograph Co. v. Powers, 233 N.Y. 143, 152, 135 N.E. 225, 227; 1 Restatement, Contracts, § 112 (1932); 2 Williston on Contracts § 322 (Rev.Ed.1936). For here it is thus clearly stated that the promise to provide money was not a joint obligation of the debtor and its stockholders, and any presumption of a joint obligation is rebutted. The debtor was therefore not responsible for the failure of the contract, and its estate cannot be held liable in damages.

Affirmed.