KAHILI, INC., a Hawaii corporation, Plaintiff-Appellant, *v.* CLYDE K. YAMAMOTO, FRANK S. YAMAMOTO, and BISHOP TRUST COMPANY, LIMITED, a Hawaii corporation, Defendants-Appellees, and WAIALAE BOWL, INC., TROPICANA LANES, INC., BISHOP TRUST COMPANY, LIMITED, and BANK OF HAWAII, Garnishees

No. 5148

FEBRUARY 6, 1973

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY ABE, J.

Frank S. Yamamoto, one of the defendants herein, held a sublease to Lot 8, 3071 Pualei Circle, in Honolulu. The sublessors of the premises were Albert M. Felix, Clyde K. Yamamoto and Hiroo Nakao, who had assigned

their respective interests to Bishop Trust Co., Ltd. by a trust agreement.

On July 29, 1965, Frank S. Yamamoto granted Clarence Allen Lee and David Jung Hai Lyum an option to purchase the sublease. The instrument was signed by the aforementioned parties and Clyde K. Yamamoto as guarantor. By letter dated June 30, 1966, Kahili, Inc. informed the Yamamotos of having acquired the interests of Lee and Lyum under the option and gave notice of its exercise of the option to purchase the leasehold interest. The Yamamotos duly consented to the assignment and acknowledged receipt of the notice to exercise the option.

After considerable negotiation, Bishop Trust Co., by letter dated February 8, 1967, informed Frank S. Yamamoto that it was refusing to consent to the assignment of the sublease to Kahili, Inc. because it was a "thin" corporation and Lee and Lyum, as principals had refused personally to guarantee the corporation's performance of the terms and conditions of the sublease. Upon receipt of a copy of this letter, Lee and Lyum on March 13, 1967 wrote Frank S. Yamamoto, notifying him that his failure to obtain the consent of Bishop Trust Co. was considered by them to be a default of the provisions of the option. They also demanded that the assignment of sublease with the consent of all the necessary parties be delivered to them by March 24, 1967 or the refund of all moneys paid or expended including payment of rental and taxes and the cancellation of the promissory note for the sum of $25,000.

In reply to the letter of March 13, 1967, the attorney for Frank S. Yamamoto wrote Lee and Lyum stating that Bishop Trust Co.'s refusal to consent to the assignment of sublease was understandable; that his client Frank Yamamoto was not in default; and that the refusal of Bishop Trust Co. to consent to the assignment was brought about by the poor financial status of Kahili, Inc.,

capitalized at \$2,000, definitely a thin corporation, and by the refusal of Lee and Lyum personally to become parties to the assignment of the sublease. The letter also stated that it was "incumbent upon you to either be parties to the assignment of sublease, or in the alternative increase the capital stock of Kalihi [*sic*] Inc."

Subsequently on April 25, 1967, Kahili, Inc., Lee and Lyum in their individual capacities, and Frank S. Yamamoto entered into a "settlement agreement."

It appears that prior thereto, as recited in the settlement agreement, Kahili, Inc. had entered into an agreement to sell the sublease to Abben & Utzon, Inc. When the sale was not consummated, Kahili, Inc. instituted this action against Clyde K. Yamamoto, Frank S. Yamamoto and Bishop Trust Co., Ltd.

This case was heard by the First Circuit Court without a jury. After the plaintiff rested, upon motion of the defendants an order was entered dismissing the action for plaintiff's failure "to show any right to relief." Judgment was entered accordingly and the plaintiff appealed.

We affirm the judgment and agree with the trial court that the plaintiff was not entitled to relief under the provision of the option, which reads "that should optionor . . . be unable to obtain the consent . . ." of the sublessors, the plaintiff is entitled to refund of moneys paid or expended.

Lee and Lyum organized Kahili, Inc., capitalized at \$2,000 and they owned all the shares of stock. Even after the corporation on June 30, 1966 notified Frank S. Yamamoto and Clyde K. Yamamoto that the option had been assigned to it and that it was exercising the option, Lee and Lyum continued to act as though they as individuals were the optionees. In fact, Lee and Lyum by letter dated August 20, 1966 [Plaintiff's Exhibit 11] gave Frank S. Yamamoto notice that they, "the undersigned, hereby exercise that certain option" dated July 29, 1965 and that "[t]he assignment of lease shall be from Frank

Yamamoto, as sublessor [sic], to either the undersigned, Kahili, Inc., or a third party." Then as stated above, on April 25, 1967, Kahili, Inc., Lee and Lyum in their individual capacities, and Frank S. Yamamoto entered into a "settlement agreement." The acts of Lee and Lyum in executing the settlement agreement seemed to imply that they as individuals had interest under the option and the sublease.[1]

On March 13, 1967, Lee and Lyum, as individuals, wrote Yamamoto claiming that he was in default and demanded full performance by him before March 24, 1967 or the cancellation of the entire transaction and the refund of all moneys expended.

James Watson Byrer, who had negotiated the sale of the sublease to Abben and Utzon, Inc., testified that he received a letter dated April 14, 1967 from Lee and Lyum, and that they stated that "we are selling all right, title and interest to receive an assignment of the above sublease dated April 29, 1958, from Frank S. Yamamoto for an option dated July 29, 1965, between Messrs. Lee and Lyum and Frank S. Yamamoto."

The acts of Lee and Lyum, above mentioned, clearly indicate that they considered Kahili, Inc., as their alter ego, and that they as individuals held the right under the option even after the corporation had notified Yamamoto of the assignment of the option to it by Lee and Lyum.

There is no question that the inadequate capitalization of Kahili, Inc. and the refusal on the part of Lee and Lyum to become personally responsible for the performance of the terms of the sublease were the reasons upon which Bishop Trust Co. based the denial of its consent to the assignment of sublease. Based on such denial, Kahili, Inc. sought relief under the option. Should Kahili, Inc. be denied relief because of the acts of Lee and

---

[1]The actions of Lee and Lyum raised doubt as to whether the option had been assigned to Kahili, Inc. There is no evidence, either by way of testimony or exhibit, to show such an assignment. However, the issue of whether an assignment of the option to Kahili, Inc., was executed was never raised.

Lyum? An argument in favor of Kahili, Inc. may be raised on the questions of whether Lee and Lyum as individuals and Kahili, Inc. are separate and independent entities and whether an action of Lee and Lyum should not in any way prejudice the rights of Kahili, Inc. and vice versa.

Other courts have, however, under certain circumstances, disregarded the corporate entity and have held that a corporation was not a separate entity apart from its stockholders, but was an association or collection of individuals. *National Bank of Commerce of Seattle* v. *Dunn,* 194 Wash. 472, 78 P.2d 535 (1938) ; *Minton* v. *Cavaney,* 56 Cal. 2d 576, 15 Cal. Rptr. 641, 364 P.2d 473 (1961) ; *Abbot* v. *Bob's U-Drive,* 222 Or. 147, 352 P.2d 598 (1960) ; *Equitable Trust Co.* v. *Gallagher,* 34 Del. Ch. 76, 99 A.2d 490 (1953) ; *African Metals Corp.* v. *Bullowa,* 288 N.Y. 78, 41 N.E.2d 466 (1942) ; *Newark Ladder & B.S. Co.* v. *Furniture Workers Union,* 125 N.J. Eq. 99, 4 A.2d 49 (1939) ; *Tynes* v. *Shore,* 117 W. Va. 355, 185 S.E. 845 (1936) ; *Asby* v. *Peters,* 128 Neb. 338, 258 N.W. 639 (1935) ; *Pohlman Inv. Co.* v. *Virginia City Gold Mining Co.,* 184 Wash. 273, 51 P.2d 363 (1935) ; *T. Towles & Co.* v. *Miles,* 131 Tenn. 79, 173 S.W. 439 (1915) ; *Keokuk Electric Ry. & Power Co.* v. *Wiesman,* 146 Iowa 679, 126 N.W. 60 (1910) . We are satisfied that the above-mentioned acts of Lee and Lyum show that they treated and regarded Kahili, Inc. as their alter ego; also, that they were using Kahili, Inc. as an agency or an instrumentality or a conduit through which they were conducting their personal business.

Under the record of this case, we believe that the recognition of the corporate fiction would bring about injustice and inequity. Therefore, we will disregard the legal entity of Kahili, Inc. and will treat the acts and of rights Lee and Lyum as individuals, and those of the corporation, Kahili, Inc., as the acts and rights of Lee and Lyum, as individuals.

Courts of other jurisdictions have held that a corporate entity may be disregarded to prevent injustice and inequity. *Zaist* v. *Olson*, 154 Conn. 563, 227 A.2d 552 (1967); *Tilley* v. *Shippee*, 12 Ill. 2d 616, 147 N.E.2d 347 (1958); *Gagnon* v. *Speback*, 389 Pa. 17, 131 A.2d 619 (1957); *W. G. Platt, Inc.* v. *Plats*, 49 Wash. 2d 203, 298 P.2d 1107 (1956); *Newark Ladder & Bracket Sales Co., Inc.* v. *Furniture Workers Union, supra*, 125 N.J. Eq. 99, 4 A.2d 49 (1939); *Pickwick Corp.* v. *Welch*, 21 F. Supp. 664 (S.D. Cal. 1937); *Watson* v. *Commonwealth Ins. Co. of New York*, 8 Cal. 2d 61, 63 P.2d 295 (1936); *Chicago, M. & St. P. Ry.* v. *Minn. Civic Assn.*, 247 U.S. 490, 501 (1918).

The general rule is that where a person by his own act makes impossible the performance or the happening of a condition such nonperformance should not relieve him from his obligation under a contract. *Tradewell Foods, Inc.* v. *N.Y. Credit Men's Adjustment Bureau, Inc.*, 179 F.2d 567 (2d Cir. 1950).

We said in *Ikeoka* v. *Kong*, 47 Haw. 220, 228, 386 P.2d 855, 860 (1963):

> ". . . [I]f a promisor himself is the cause of the failure of performance . . . of a condition upon which his own liability depends, he cannot take advantage of the failure." 5 Williston, *Contracts*, § 677 (Rev. ed. 1961). If a promisor, without legal excuse, prevents the happening of an event upon which his liability depends, he can not thus be allowed to defeat the promise. *Fitzpatrick* v. *Gilson*, 176 Mass. 477, 57 N.E. 1000; *Patterson* v. *Meyerhofer*, 204 N.Y. 96, 97 N.E. 472; *Middleton* v. *Thompson*, 163 Pa. 112, 29 Atl. 796; *Fischer* v. *Bell*, 91 Ind. 243; *Peet* v. *Sherwood*, 43 Minn. 447, 45 N.W. 859; *Cheatham* v. *Yarbrough*, 90 Tenn. 77, 15 S.W. 1076; *United States* v. *United Engineering Co.*, 234 U.S. 236, 34 S. Ct. 843, 58 L.Ed. 1294. ". . . [N]o one can avail himself of the nonperformance of a condition precedent, who has him-

self occasioned its non-performance." *Sibbald* v. *The Bethlehem Iron Co., supra* at 384. *Young* v. *Hunter,* 6 N.Y. 203. The doctrine is purely one of waiver. *Amies* v. *Wesnofske, supra; Livingston* v. *Malever, supra;* 5 Williston, *Contracts,* § 678 (Rev. ed. 1961).

*See also Booth* v. *Booth & B. Comm. School,* 120 Conn. 221, 180 A. 278 (1935).

The refusal of Bishop Trust Co. to consent to the assignment of the sublease to Kahili, Inc., capitalized at $2,000 and definitely not financially responsible, upon the refusal of Lee and Lyum personally to secure the performance of the terms and conditions of the sublease by Kahili, Inc., was reasonable and should be regarded as good business practice on the part of any lessor.

Here, Kahili, Inc. and Lee and Lyum knew or should have known that no responsible lessor or agent of a lessor would consent to an assignment of sublease to a thin corporation without the endorsement of responsible individuals to secure the performance of the terms and conditions of the sublease by the corporation. Thus, it must be deemed that Kahili, Inc., made the securing of Bishop Trust Co.'s consent to the assignment of the sublease impossible, and it should not be entitled to relief based on the Yamamotos' failure to obtain such consent. Therefore, the trial court correctly dismissed the plaintiff's complaint.

Affirmed.

*Norman H. Suzuki* for plaintiff-appellant.
*George T. Nakamura* for defendants-appellees.