**ATLANTIC, Inc. OF POMPANO BEACH v. VIC MAFFEY CONSTRUCTION, Inc.**

No. 75-2061.

Circuit Court, Broward County.

December 13, 1976.

Michael Gomes of Weck & Stone, Pompano Beach, for the plaintiff.

M. Ross Shulmister of Josias & Shulmister, Fort Lauderdale, for the defendant.

JAMES A. McCAULEY, Circuit Judge.

*Final judgment:* A mechanic's lien foreclosure action was brought by a subcontractor against an owner of a construction project. The general contractor was sued on the construction subcontract. The owner defaulted, and final judgment of foreclosure was entered. Issue of the general contractor's liability proceeded to trial.

Evidence showed that the subcontractor had fully performed under the subcontract and had not been paid. The general contractor had also not been paid, nor had it received construction funds which were or should have been allocated to work performed by the subcontractor. Prior to the subcontractor's completion, the general contractor had been physically prevented by the owner from entering the construction site. Nevertheless, the general contractor had made reasonable efforts to obtain the construction funds from the owner and from the owner's construction lender, and was continuing those efforts through collateral litigation.

The controlling issue of law was the construction of the following provision in the subcontract —

> IN CONSIDERATION WHEREOF, the said Contractor agrees that he will pay to the said Sub-contractor, in monthly payments, the sum of FORTY TWO THOUSAND SIX HUNDRED THIRTEEN and NO/100 DOLLARS ($42,613.00) for said materials and work, said amount to be paid as follows: Ninety per cent (90%) of all labor and material which had been placed in position and for which payment has been made by said "Owner" to said Contractor, to be paid on or about the fifteenth (15th) day of the following month, except the last payment, which the said Contractor shall pay to said Sub-contractor immediately after said materials and labor installed by said Sub-contractor has been completed, approved by said Architect, and final payment received by the Contractor and satisfactory evidence furnished to Contractor by Sub-contractor that all labor and material accounts for use on the particular work have been paid in full.

The subcontractor urged that those portions of the above provision specifying that payments be made from the amounts paid by the owner to the general contractor do not affect the liability of the general contractor by creating conditions precedent, but merely allow the general contractor to delay payment "for a reasonable period of time in order to afford the general contractor an opportunity to procure the funds necessary to pay the subcontractor," and do not require the subcontractor to wait an indefinite period of time until the general contractor is paid by the owner. A leading case for the subcontractor's position is *Thos. J. Dyer Co. v. Bishop International Engineering Co.*, 303 F.2d 655 (6th Cir. 1962).

That case and similar cases ignore the realities in construction financing where payments are frequently made directly to the subcontractor either by the owner or the construction lender, with the sanction of the Florida Mechanics' Lien Law. Florida Statutes §713.06(3) (1975). The result of *Dyer* and similar cases negates the attempt of the general contractor to avoid becoming a construction lender and a surety for the owner, circumstances the general contractor probably does not contemplate nor for which it is normally compensated.

Florida has rejected the reasoning in *Dyer* and similar cases. In *Edward J. Gerrits, Inc. v. Astor Electric Service, Inc.*, 328 So.2d 522 (3d D.C.A. Fla. 1976), the court interpreted an analogous contractual clause and pointed out that the subject is not a debt already in existence, but rather an obligation to pay upon a contract which created the obligation. The court held that — "The contract may be reasonably interpreted as shifting to the subcontractor the risk of the owner's failure to pay." *Id.* at 524.

The equity of the Florida rule is clear. First, it is the owner and his property that should be held accountable for the costs of construction, for it is the owner who receives the profits or should sustain the losses resulting from the improvements. Second, the subcontractors and materialmen have been granted a direct right of action against the owner and his property under the Florida Mechanics' Lien Law (Chapter 713), and the general contractor has been statutorily placed in an inferior position to subcontractors and materialmen. *Fla. Stat.* §713.06(4) (1975). Third, should the general contractor collect from the owner on the direct contract, the condition precedent will have been fulfilled, maturing the cause of action by the subcontractor or materialman on the subcontract. And fourth, if the general contractor should effect its own mechanic's lien foreclosure, it will remain subject to the liens of subcontractors and materialmen.

The interposition of the failure of the condition precedent is valid unless the failure of the condition is caused by the promisor. *Tradewell Foods, Inc. v. New York Credit Men's Adj. Bur., Inc.*, 179 F.2d 567 (2d Cir. 1950), *Knowles v. Henderson*, 156 Fla. 31, 22 So.2d 384, 386 (1945). Where the promisor has the ability to effect the occurence of the condition, he must not allow its failure to occur as a result of his negligence or unreasonable failure to act. *Cohen v. Mohawk, Inc.*, 137 So.2d 222, 224 (Fla. 1962). In this, as in most construction contracts, the general contractor must submit draw requests, and must take other reasonable steps to procure payment from the owner. Nonpayment was not, in this case, occasioned by the general contractor, either by way of negligence or by unreasonable failure to act or otherwise.

In this case, it is not necessary to decide whether the general contractor has a duty to enforce payment by the owner through litigation. However, to the extent such payment is thereby effected, and to the extent such payment can be specifically attributed to the subcontractor's performance of its subcontract, the condition precedent would be fulfilled, at least to the extent the amount due the subcontractor remains unpaid or otherwise unsatisfied through remedies available to the subcontractor.

Accordingly, it is the holding of this court that the subcontract in this case shifted to the subcontractor the risk of the owner's failure to pay, that the owner's payment to the general contractor of amounts attributable to the subcontractor's performance is a condition precedent to any liability attaching to the general contractor, and that the condition precedent was neither procured by the general contractor nor was a result of the general contractor's negligence or unreasonable failure to act.

It is further held that if the general contractor's efforts to effect payment are successful, then, except to the extent the subcontrator is able to satisfy its claim through alternative remedies (such as the Mechanics' Lien Law), the subcontractor shall participate in such receipts.

Judgment is therefore rendered for defendant, Vic Maffey Construction, Inc., in accordance with the foregoing opinion.