EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, Executor under the last will and testament of Margaret C. Kane, deceased,

Plaintiff below, Appellant,

*vs.*

HUGH F. GALLAGHER,
Defendant below, Appellee.

*Supreme Court, On Appeal, October 2, 1953.*

SOUTHERLAND, Chief Justice, and WOLCOTT and TUNNELL, Justices, sitting.

*Stephen E. Hamilton, Jr.,* Wilmington (*H. Albert Young,* Wilmington, on the brief), for appellant.

*Joseph Donald Craven,* Wilmington, for appellee.

TUNNELL, Justice, delivering the opinion of the court.

Hugh F. Gallagher, the defendant, during the whole period with which this suit is concerned, has been the president, the majority stockholder, and one of the three members of the board of directors of Union Park Motors, Inc., a corporation engaged in the automobile business at Wilmington, Delaware.

Margaret C. Kane, a cousin of defendant, was for a number of years employed by Union Park Motors, Inc., and up until her death she remained its trusted and valued employee. She was the corporation's secretary-treasurer and one of the members of the board of directors. Since 1936 Miss Kane had owned one share of stock in the corporation.

In 1941 the defendant, out of his personal holdings [1] of Union Park stock, made a gift to Miss Kane of an interest in 19 shares. The instrument of gift was in the form of an assignment to Union Park Motors, Inc., as trustee, to hold the stock for Margaret C. Kane for her life, and upon her death to assign it, free of the trust, unto three named sons of the defendant.

As of September 27, 1946, another instrument was prepared for defendant by defendant's counsel of record in this cause, in an attempt to enlarge Miss Kane's stock holdings. This instrument was duly signed and sealed in triplicate by defendant in his individual capacity, by Union Park Motors, Inc., by Margaret C. Kane, and, because of an interest in certain terms of the agreement which are of no concern to us, by Catherine Gallagher, defendant's sister. However, no new or other stock certificate was issued to Margaret C. Kane or to anyone in her behalf prior to her death on the 18th day of January, 1947.

Letters were not at once taken out on Margaret C. Kane's estate, and for a time there was some uncertainty as to whether the Equitable Trust Company, which was named in the will as executor, would serve or would renounce. While matters so stood, the defendant made a visit to the Kane home, where he obtained both Margaret C. Kane's copy of the 1946 agreement and also Catherine Gallagher's copy, which

---

1. Before this transfer he owned 149 out of the 250 shares outstanding.

Miss Kane had been keeping because Miss Gallagher had no safe deposit box. After some interval defendant destroyed all three copies. So far as the record shows, although the paper was, as stated above, prepared by defendant's attorney, no copy of it, either signed or unsigned, thereafter remained in existence.

In due course Equitable Trust Company qualified as executor and demanded the 19 shares of stock which it claimed were rightfully Margaret C. Kane's at the time of her death. Upon defendant's refusal to deliver or to account for non-delivery, suit was commenced in the Court of Chancery. Plaintiff claimed the right to recover, either on the theory of a completed gift or on the ground that there was an enforceable contract. It prayed alternatively for delivery of the 19 shares or of their equivalent in money, in either case with an accounting for dividends.

The case was tried below before Chancellor Harrington, who included among his factual findings a determination that the following excerpt from the testimony of one of the witnesses was a fair reconstruction of that portion of the instrument of September 27, 1946, which concerned Margaret C. Kane:

> "After long years of faithful service and devotion to Union Park Motors and Hugh F. Gallagher, its president, Margaret C. Kane is given 19 shares of Union Park Motors capital stock fee simple. In the event of Margaret C. Kane's death, her executors or heirs shall sell back Margaret C. Kane's stock to the Union Park Motors or to J. Harry Gallagher, Hugh F. Gallagher, Jr., Donald J. Gallagher at a price set by the president of the Equitable Trust. No individual (meaning the boys, I judge his sons) shall receive more than 5 shares."

The Chancellor's opinion is reported in 31 *Del.Ch.* 88, 67 *A.2d* 50.

Plaintiff appealed. The matter came on to be heard by this court as it was constituted prior to the constitutional amendment of 1951, *Art. IV*, § 1, *et seq., Del.C.Ann.* It was at first decided that the Chancellor had been right in denying the plaintiff relief on the gift theory and that since plaintiff had not relied upon the contract

theory before the Chancellor, that point could not be urged for the first time on appeal. *32 Del.Ch.* —, *77 A.2d* 548.

Before any mandate went down to the Court of Chancery, however, a petition for re-argument was filed, representing, *inter alia*, that the contract theory had in fact been argued in the court below. The Supreme Court was impressed by this contention, and in an unreported opinion dated the 28th day of February, 1951, speaking through Judge Layton, it said:

> "On the other hand, appellant did not wholly omit to make this argument in the lower court and we cannot overlook the fact that this case presents a most peculiar factual situation. Under the circumstances, we feel that a reconsideration of the problem may be called for. However, we doubt if much will be gained by granting a reargument in this case on a point which was not considered at all in the court below.

> "It occurs to us that the most effective way of solving the difficulty is to remand this case for re-trial before the Chancellor, but that the re-trial be limited to the question whether the trust agreement of 1946 is a contract based upon valid consideration requiring the transfer in fee to decedent's personal representatives of 19 shares of the stock of Union Park Motors, Inc."

Neither this second opinion nor the mandate entered thereon on May 2, 1951, made any express reference to that portion of the petition for re-argument which contained plaintiff's application to re-argue its gift theory. The mandate covered the contract point in language similar to what we have quoted from the opinion.

The case was thereupon remanded to the Court of Chancery and by stipulation was submitted to Vice Chancellor Bramhall "on the basis of the pleadings, depositions, testimony, opinions of the Supreme Court and briefs * * *". The Vice Chancellor's opinion, reported in *Del.Ch.* —, —, *95 A.2d* 470, 471, held in substance that the "trust agreement of 1946", to which his attention had been directed by the Supreme Court, was totally lacking in consideration and, therefore, was not enforceable as a contract.

Following this opinion and the decree entered upon it, plaintiff applied to the Vice Chancellor for relief grounded upon its "gift theory", basing its application upon the provisions of *Rule 60(b)* of the *Court of Chancery, Del.C.Ann.* A memorandum opinion was handed down, and a decree entered on the 29th day of April, 1953, denied this form of relief.

From both these decrees of the Vice Chancellor the plaintiff has appealed. These two appeals are the ones designated in the caption hereof as No. 17, 1953, and No. 18, 1953, respectively. Plaintiff further contends that the petition for reargument filed in this court as it was formerly constituted still stands open and undisposed of, because it says that no judgment or mandate ever ruled upon that portion of the petition which was based upon its gift theory. Plaintiff, therefore, now relies upon one old appeal and two new ones.

Plaintiff elected first to argue the alleged error of the Vice Chancellor in holding that the contract is unenforceable for want of consideration. We shall adopt the same order of treatment.

Was there, then, consideration to support defendant's promise?

We agree with defendant that the written instrument dated the 27th day of September, 1946, as it was reconstructed below, is couched in donative language, and, consequently, if the inquiry here were to be confined within the limits of that paper-writing, no supporting consideration could be found. But, as we see the facts, only a portion of the agreement[2] of 1946 was reduced to writing, and our view of the scope of the present inquiry is that it embraces the whole contract. We agree with the Vice Chancellor that the question left open by the mandate is the broad one of whether there "was any contractual relationship between the parties" or whether "there was any legal consideration given by Margaret C. Kane for the stock."

As we had occasion to point out in *Gottlieb v. Heyden Chemical Corp., Del.,* 90 *A.2d* 660, 664, consideration is to be detected if it is present anywhere in the transaction in question, regardless of

---

2. We do not see that the apparently inadvertent inclusion of the word "trust" in the description of this agreement by the Supreme Court as the "trust agreement of 1946" has any importance.

whether any label was put on it, and regardless of whether it was spelled out in the paper-writing.

The instant case calls for the application of that principle. While the instrument makes no reference to consideration, a valuable consideration does in fact come into view when the attending facts and circumstances are examined. What was written became enforceable because of what was agreed upon orally.

Since the holdings essential to our conclusion are not set out in any of the previous opinions in this litigation, it is necessary to pause here for detailed references to the record. There is no necessity to remand for further findings of fact, however, for the essential ones are undisputed; indeed, they appear from defendant's own admissions.

Defendant's answer contains this allegation:

"(j) That the instrument dated September 27, 1946 was meant to take the place of a trust agreement dated May 15, 1941 * * *."

In his pre-trial deposition defendant was questioned and answered in the following sequence:

"Q. You were holding 19 shares as trustee, then you wanted to give her 19 shares? A. That's right.

"Q. The effect would be that she would be the recipient or the owner of 19 shares of stock? A. Outright.

"Q. Outright? A. Outright in her name, with no strings attached to it.

"Q. And you would be holding another additional 19 shares as trustee? A. Oh, no. One would have to offset the other.

"Q. Why would it, Mr. Gallagher? A. Certainly. That would make 38 shares involved; then you would have 19 set up against a trust agreement, and then you would have 19 that you transferred outright; so that would make a total of 38 shares involved, 19 on the trust agreement and 19 on the outright agreement. So, one would have to offset the other."

At the trial defendant and his counsel made repeated other statements in harmony with paragraph (j) of the answer and with what

was above quoted from the deposition. Nothing was said to the contrary.

█ As we view the record, therefore, consideration is supplied by the agreement to substitute the 1946 arrangement for the one established in 1941. Miss Kane was to get 19 shares of stock in fee simple, in return for which she was to relinquish her life interest in the same number of shares, and defendant, on his part, was to be relieved, so far as the rights and interests of Miss Kane were concerned, of the duties and responsibilities of trusteeship.

█ It will be recalled, of course, that the nominated trustee was Union Park Motors, Inc., and that the title to the 19 shares of stock had to move from defendant personally. But the corporate entity is here of no importance. It is a familiar principle that circumstances frequently require courts to look behind the corporate curtain. *Fletcher, Cyclopedia of Corporations, (Perm. Ed.) Vol. I, Sec.* 41; *J. J. McCaskill Co. v. United States,* 216 *U.S.* 504, 515, 30 *S.Ct.* 386, 54 *L.Ed.* 590; *Martin v. D. B. Martin Co.,* 10 *Del.Ch.* 211, 88 *A.* 612, 615.

█ The instant case does not present one of the difficult situations which sometimes arise in the application of this legal principle. We have here not merely the important facts that the defendant owned a clear majority of the stock, that the remaining shares, except for those few here involved, were owned by members of defendant's immediate family, and that he personally dominated the corporation in all its operations, but the defendant in his testimony went so far as to relieve the court even from the necessity of drawing its own inference from the facts. In his testimony defendant repeatedly stated that he considered himself as the trustee and, both directly and indirectly, that he regarded himself as the corporation. The following excerpt is fairly illustrative of his testimony on the point:

"A. I have always considered myself as trustee, Mr. Coxe.

"Q. Do you still consider yourself as trustee? A. Yes, sir, as Union Park Motors. I am Union Park Motors.

"Q. You believe that you are, sir? A. I am. I am the controlling interest and have acted as trustee for she and my sister since that date."

Defendant, therefore, cannot be heard to urge any distinction between himself and his corporation which could bear materially upon the present issue.

We are not here concerned with any problem similar to the one which troubled the Chancellor on the gift question, as to whether this was an attempt to deal a second time with the same 19 shares which had already been given away. Defendant had ample stockholdings to enable him to perform his contract without touching the first 19 shares. Compare *Baker v. Bankers' Mortgage Co.*, 15 *Del.Ch.* 209, 135 *A.* 486, and *Belle Isle Corporation v. MacBean*, 29 *Del.Ch.* 261, 49 *A.2d* 5, 11. Indeed, defendant seems to agree with our view, for this is what he said:

"Q. The agreement of September, 1946, made no mention of where you were to get that 19 shares from, did it? A. I don't think it is necessary, as long as there was 19 shares mentioned of Union Park Motors, Inc. stock."

Examining the transaction in perspective, therefore, we conclude that the Court of Chancery had before it among the undisputed facts of record all the elements of a binding contract, and we conclude that it was error not to have held that the defendant is bound either to convey 19 shares of Union Park Motors stock to the decedent's executor or to account for the value thereof, with declared dividends and interest thereon.

The judgment appealed from in No. 17, 1953, therefore, must be reversed. While it follows that if it was error for the Vice Chancellor to withhold relief on the contract theory, it must have been error for the former Chancellor to withhold relief on both theories, nevertheless, a reversal in one of these appeals renders the other two moot. Therefore, the judgments entered in No. 1, February Term, 1950, and No. 18, 1953, will be orders of dismissal. Under the circumstances, however, we shall in each instance exercise the discretion reserved under our *Rule* 25(3) to impose the costs upon defendant.

The case will be remanded to the Court of Chancery for such further proceedings as may be necessary to settle the form of relief.