TERRY APARTMENTS ASSOCIATES, a Delaware Partnership, and Facciolo Construction Co., a Delaware Corporation, Plaintiffs,

v.

ASSOCIATED–EAST MORTGAGE CO., a New Jersey Corporation, Pennamco, Inc., (formerly Associated Mortgage Companies Inc.), a Delaware Corporation, First Pennsylvania Bank, N.A., a corporation of the State of Pennsylvania and First Pennsylvania Corporation, a corporation of the State of Pennsylvania, Defendants.

Court of Chancery of Delaware, New Castle.

Submitted Oct. 13, 1976.

Decided Jan. 31, 1977.

John VanBrunt, Jr., Wilmington, for plaintiffs.

Arthur G. Connolly, Jr., Connolly, Bove & Lodge, Wilmington, for defendants First Pennsylvania Bank N.A. and First Pennsylvania Corp.

MARVEL, Chancellor:

Plaintiffs' complaint basically seeks the granting of relief in the form of an order compelling specific performance on the part of the defendants Pennamco and Associated-East of their alleged contractual commitments to provide continuing financing for the construction by plaintiffs of an apartment building located at 25th and Broom Streets in Wilmington, such financing having been allegedly agreed to be furnished in the form of a construction loan secured by a mortgage, as to which undertaking plaintiffs seek to hold the present moving parties accountable, contending that they bear responsibility in the carrying out of such commitments. And while plaintiffs' dealings in the obtaining of commitments for mortgage moneys which allegedly resulted in the wrongs complained of were with the defendants Pennamco and Associated-East, it is contended by plaintiffs that the defendants First Pennsylvania Bank and the First Pennsylvania Corporation are responsible for the actions of Pennamco and Associated-East, the latter having allegedly served as mere tools or alter egos of the former corporations and there would appear to be no doubt but that the construction moneys here involved basically have their source in funds of the moving defendants. The construction loan arrangement here involved is of a special nature in that it is guaranteed by the Department of Housing & Urban Development of the United States under a program designed to provide subsidized housing for the elderly, the director of the Wilmington Federal Housing Administration having approved in 1971 construction of the apartment house in issue for occupation by the elderly.

In the meantime, however, Associated-East has taken steps to foreclose its mortgage on the premises in issue in the Superior Court in and for New Castle County, which action is in effect stayed pending this Court's ruling on whether or not the moving defendants are properly joined as parties with responsibility for the matters here being litigated. As of the time of the filing of the complaint herein approximately $1,152,000 had been advanced directly or indirectly by the defendants in the form of construction loans, and I have no doubt on the present record but that First Pennsylvania Bank has made use of the corporate hierarchy hereinafter set forth for the purpose of making investments, such as the one here in issue, in geographical areas outside its federally established domain of the Eastern District of Pennsylvania.

The defendant First Pennsylvania Bank N.A., a Pennsylvania corporation and a national bank, has moved to dismiss the complaint as to it on the ground that Delaware is an improper venue for the suit against it, while the defendant First Pennsylvania Corporation, also a Pennsylvania corporation, has moved to dismiss the complaint as to it for alleged lack of personal jurisdiction over it. Both of said defendants have also moved to dismiss the complaint for its alleged failure to state a claim against them.

The defendant First Pennsylvania Bank N.A. is, as noted above, a national bank with offices in Philadelphia and since February, 1969 a wholly-owned subsidiary of the defendant First Pennsylvania Corporation. In November, 1969, First Pennsylvania acquired control of Associated Mortgage Companies, Inc., now the defendant Pennamco. The defendant Associated East-Mortgage Co. is in turn a wholly owned subsidiary of Pennamco, the latter being a Delaware corporation while the defendant Associated-East is a New Jersey Corporation. It appears to be conceded that the latter foreign corporation has done business in Delaware in connection with the matters in issue. See 8 Del.C. Sec. 382.

Implicit in plaintiffs' theory of its case is the assumed premise that this is a situation in which the separate identities of the cor-

porations involved may be ignored and the so-called corporate veil of separate corporate existence disregarded, it being contended by plaintiff that the First Pennsylvania Corporation controls First Pennsylvania Bank and that both such corporations control Pennamco and Associated-East.

■ Turning to the first question in issue, namely whether or not plaintiff has selected the correct forum in which to sue the defendant First Pennsylvania Bank, it is clear that 12 U.S.C. Sec. 94, which governs actions against national banks and provides as follows is dispositive of such question:

"Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established . . . ."

And it is clearly the law that:

"A national bank is 'established', within the meaning of section 94 of Title 12, only in the federal district [court] encompassing the location specified in its charter." *General Electric Credit Corp. v. James Talcott, Inc.,* 271 F.Supp. 699, 703 (S.D.N.Y.1966).

See also *Northside Iron & Metal Co. v. Dobson & Johnson, Inc.* (CA 5), 480 F.2d 798 (1973), in which it is stated:

"A national bank is 'established' or 'located' 'only in the place where its principal office and place of business is as specified in its organization certificate.' . . . Even establishment of a branch office in another district will not suffice to 'locate' the bank there for venue purposes. *United States National Bank v. Hill,* 9th Cir. 1970, 434 F.2d 1019. In essence the statute confers on national banks immunity from suit outside the district, territory, county, and city where it is located. Although the language of the statute is permissive—specifying that actions against national banks 'may be had' in the district where it is located—it is now authoritatively settled that the

effect of the statute is mandatory; national banks may be sued only on their home ground. *Mercantile National Bank v. Langdeau,* 1963, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523; *Michigan National Bank v. Robertson,* 1963, 372 U.S. 591, 83 S.Ct. 914, 9 L.Ed.2d 961."

■ And while plaintiffs contend that this action against the First Pennsylvania Bank on which service was purportedly accomplished under the provisions of 8 Del.C. Sec. 382 is in fact in rem and thereby exempted from the venue provisions of 12 U.S.C. Sec. 94, I am satisfied that such action, which is not one directly involved with the foreclosure of a mortgage or the removal of a cloud on title or the like, it is not an action in rem but one based on alleged breaches of contract and alleged acts of fraud in connection therewith, seeking specific performance of alleged undertakings to furnish financial backing for plaintiff's project. This action is therefore, in my opinion, a transitory action and as such, one brought in personam, it necessarily follows that because First Pennsylvania Bank is a national bank that such an action may be brought only in the forum in which such corporation is established, in this case the Eastern Federal District of Pennsylvania. The motion of the First Pennsylvania Bank to dismiss the complaint against it on the ground that plaintiffs have selected an improper venue for their action against such corporation will be granted.

■ Turning to the motion to dismiss of First Pennsylvania Corporation for lack of jurisdiction, plaintiffs appear to recognize that such corporation being a foreign corporation does not come within the transacting of business provisions of 8 Del.C. Sec. 382 but rather contends that the facts of record establish that there is no valid reason why such corporation may rely on its separate corporate entity in light of its participation in the funneling of its funds to the corporate defendants which actually do business in Delaware, namely, Pennamco and Associated-East. Particular emphasis is placed by plaintiffs on the interest of First Pennsyl-

vania Corporation in the so-called participation agreement which is based on a FHA form in which it is provided that such agreement may not be amended without such corporation's consent. However, I am satisfied on the basis of the present record that First Pennsylvania Corporation under the terms of such agreement merely became an investor in the project here in issue and that it was Associated-East which was to negotiate, control, manage and service the loan in question.

As to other dealings between both Pennsylvania corporations and Pennamco and Associated-East and plaintiffs' reliance on language found in papers such as First Pennsylvania Bank's 1974 10K form, I am satisfied that this is not that rare case in which the separate entities of corporations having interlocking boards of directors and close business dealings may be ignored and the so-called corporate veil pierced.

This Court noted in the *Pauley Petroleum, Inc. v. Continental Oil Co.*, 43 Del.Ch. 366, 231 A.2d 450 (1967) aff'd Del.Supr., 239 A.2d 629 (1968):

" 'In the absence of fraud, the separate entity of a corporation is to be recognized. This principle has been enunciated by all of the courts of this state.'

". . . Certainly in the normal course of events a corporate entity must be regarded as more than a mere formality. It is an entity distinct from its stockholders even if its stock is wholly owned by one corporation. *Buechner v. Farbenfabriken Bayer Aktiengesellschaft,* supra; *Bird v. Wilmington Society of Fine Arts,* 28 Del.Ch. 449, 43 A.2d 476 (1945). And this is true here, where Mexofina has a purpose and function peculiar to it and which it fulfills. And the record indicates that Continental has respected the formalities necessary for application of the rule followed in the normal course of events. On this point, I do not regard as significant in determining the legal relationship, the sometime use of personal pronouns or other 'loose' references by Continental personnel in reference to

Mexofina or the Mexican interest in correspondence and depositions. Under these circumstances, it is my view that the law must and does respect the separateness of the corporate entity without reference to the stockholder or the situs of ultimate power over its affairs."

On appeal the Supreme Court said:

"There is, of course, no doubt that upon a proper showing corporate entities as between parent and subsidiary may be disregarded and the ultimate party in interest, the parent, be regarded in law and fact as the sole party in a particular transaction. This, however, may not be done in all cases. It may be done only in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation require it, are involved. 1 Fletcher, Cyclopedia Corporations (Perm. Ed.), Sec. 41; *Martin v. D. B. Martin Co.,* 10 Del.Ch. 211, 88 A. 612, 102 A. 373; *Equitable Trust Co. v. Gallagher,* 34 Del.Ch. 76, 99 A.2d 490, and *Buechner v. Farbenfabriken Bayer Aktiengesellschaft,* 38 Del.Ch. 490, 154 A.2d 684.

"There is no showing whatsoever in this litigation of fraud or other elements which would authorize the disregard of the separate corporate entities of Continental and its wholly-owned subsidiary, Mexofina. There is nothing to put this case within the framework required to disregard corporate entities and treat the two separate corporations as one. As a matter of fact, as far as the record before us shows, the separate existence of Mexofina serves a most legitimate business purpose."

I conclude that on the basis of the record before me that the separate entities of the moving defendants cannot be ignored merely because the moneys here involved were in effect invested in the project in issue by a foreign banking corporation, and the fact that substantially all of the moneys advanced to plaintiffs for the construction of

the building here in issue came from the First Pennsylvania Bank does not lead to a conclusion in the absence of fraud or the like, which is not shown to exist here, that the separate corporate entities of the moving defendants may be disregarded. The motion of First Pennsylvania Corporation under Rule 12(b)(3) to dismiss the complaint for lack of jurisdiction over the person will be granted. In light of the two rulings hereinabove made on venue and jurisdiction, it is inappropriate to decide the moving parties' motion to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Order on notice.