**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| KODIAK BUILDING PARTNERS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2022-0311-MTZ |
| | ) | |
| PHILIP D. ADAMS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

WHEREAS, having considered Defendant Philip D. Adams's Motion to Dismiss Plaintiff's Verified Complaint or to Stay the Case, the parties' briefing on the matter, and subsequent developments in other jurisdictions, it appears:[1]

A.    Defendant Philip D. Adams, an Idaho resident, was an employee of Northwest Building Components, Inc. ("Northwest") until October 2021, when he separated from Northwest.

B.    Adams was also a Northwest stockholder until June 1, 2020, when plaintiff Kodiak Building Partners, LLC ("Kodiak") bought all of Northwest's stock,

---

[1] For the purposes of the pending Motion, I draw the relevant facts from the Verified Complaint, Docket Item ("D.I.") 1 [hereinafter "Compl."], documents integral thereto, as the admissions on file, together with any affidavits, the briefing, and documents otherwise subject to judicial notice. *E.g.*, *Sample v. Morgan*, 935 A.2d 1046, 1055 (Del. Ch. 2007) ("In considering a motion to dismiss for lack of personal jurisdiction under Court of Chancery Rule 12(b)(2), I am not limited to the pleadings."); D.R.E. 201. I must draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *id.* at 1056 (citing *Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 727 (Del. Super. 1996)).

including Adams's shares. At that time, Adams entered into two restrictive covenant agreements: one with Kodiak (the "Kodiak RCA"),[2] and one with Northwest (the "Northwest RCA").[3] Adams also entered into an Employment Agreement with Northwest (the "Northwest Employment Agreement") which references and contains as an exhibit the Northwest RCA.[4] The Kodiak RCA and Northwest RCA both contain noncompete, nonsolicit, and noninterference provisions.

C.     The Kodiak RCA provides it is "the entire agreement between the Parties [(Kodiak, Adams, and two other individuals)] with respect to the subject matter hereto and thereof, and supersede all prior agreements, understandings and negotiations both written and oral, among the Parties with respect to the subject matter hereof and thereof."[5] The Northwest RCA provides:

---

[2] Compl. Ex. 1 [hereinafter "Kodiak RCA"].

[3] D.I. 15 [hereinafter "Mot."] Ex. 2, [hereinafter "Northwest Empl. Agr."], Ex. A thereto [hereinafter "Northwest RCA"].

[4] Northwest Empl. Agr. § 4; Northwest RCA.

[5] Kodiak RCA § 17.

This Agreement, the Employment Agreement, the Stock Purchase Agreement, and that certain Restrictive Covenant Agreement entered into by and among Employee and the other parties named therein, dated as of the date hereof, and any other agreements contemplated herein or therein[] constitute the entire agreement between the Parties [(Northwest and Adams)] with respect to the subject matter hereof and thereof, and supersede all prior agreements, understandings and negotiations, both written and oral, among the Parties with respect to the subject matter hereof and thereof.[6]

The Northwest Employment Agreement, to which the Northwest RCA is attached at Exhibit A, defines "Stock Purchase Agreement" and "Restrictive Covenant Agreement."[7]

D.     The Northwest RCA and Northwest Employment Agreement each contain Colorado choice of law and jurisdiction provisions.[8] The Kodiak RCA contains Delaware choice of law and jurisdiction provisions; Adams further agreed he would not assert this Court lacked personal jurisdiction over him.[9] The Kodiak RCA also states: "This Agreement may be amended only by a writing signed by the Parties," namely Adams and Kodiak.[10]

---

[6] Northwest RCA § 17.

[7] Northwest Empl. Agr. at 1; *id.* § 4.

[8] *Id.* § 13; Northwest RCA §§ 14, 15.

[9] Kodiak RCA §§ 14, 15.

[10] *Id.* § 13.

E.      When Adams separated from Northwest, he was sent a "Confidential Severance and Release Agreement" (the "Northwest Severance Agreement") between him and "the Company" Northwest, with both of them together as the "Parties."[11]  Adams reviewed the Northwest Severance Agreement with counsel, and signed it.[12]  The Northwest Severance Agreement provides it "is the entire agreement between the Parties relating to the matters set forth [t]herein" and "supersedes any and all prior oral or written promises or agreements between the Parties."[13]  It contains confidentiality, nondisparagement, and return of property provisions—but no noncompete or nonsolicit provisions.[14]  It contains Idaho choice of law and venue provisions.[15]

F.      By late January or early February 2022, Kodiak heard a rumor that Adams had joined Builders FirstSource Inc. ("BFS"), a competitor of Kodiak's in the residential structural building product business.  After hearing that rumor, Adams contacted a current Northwest employee seeking confidential information about Northwest's customer order scheduling.  On or around March 10, 2022, a third party confirmed to Kodiak that Adams was working for BFS.  At that point, Northwest

---

[11] Mot. Ex. 3 [hereinafter "Northwest Severance Agr."].

[12] Mot. ¶ 11.

[13] Northwest Severance Agr. § 16.

[14] *Id.* §§ 7, 9, 11.

[15] *Id.* § 18.

4

reviewed its recent cancelled orders and concluded one customer had been lost to Adams and BFS, and that Adams had been soliciting Northwest customers.

G.     Kodiak and Northwest sent Adams and BFS cease-and-desist letters, asserting Adams was in breach of the Kodiak RCA and the Northwest RCA.[16]  On March 30, Northwest sued Adams for breach of the Northwest RCA in the United States District Court for the District of Colorado (the "Northwest Action").[17]  On April 5, Kodiak sued Adams in this Court and filed a motion for preliminary injunction (the "Kodiak Action").[18]

H.     On April 27, Adams moved to dismiss for lack of personal jurisdiction (the "Motion"), contending the Northwest Severance Agreement superseded the Northwest Employment Agreement, the Northwest RCA, and the Kodiak RCA, so the Kodiak RCA's Delaware forum selection clause could not support personal jurisdiction over Adams.[19]  Adams also moved to stay the Kodiak Action in favor of the first-filed Northwest Action.[20]  The parties briefed the Motion, and the Court held oral argument on May 12.[21]

---

[16] Compl. Ex. 2.

[17] *Northwest Building Components, Inc. v. Adams*, 2022 WL 1689293, at *1 (D. Co. May 26, 2022).

[18] D.I. 1; D.I. 3.

[19] Mot.

[20] *Id.*

[21] D.I. 16 [hereinafter "OB"]; D.I. 30; D.I. 33; D.I. 34.

I.      Adams had also moved to dismiss or transfer the Northwest Action. On May 26, the Colorado District Court granted his motion to transfer to the District of Idaho.[22] The Court explained that the Northwest Severance Agreement superseded the Northwest RCA, including its Colorado forum selection clause.[23] On June 15, Northwest voluntarily dismissed the Northwest Action before the United States District Court for the District of Idaho.[24]

**IT IS ORDERED**, this 6th day of July, 2022, that:

1.      It is undisputed that the sole basis for this Court to assert personal jurisdiction over Adams, an Idaho resident, is the Kodiak RCA's Delaware forum selection clause.[25] If the Northwest Severance Agreement does not supersede the Kodiak RCA, then Adams's Motion must be denied; if the Northwest Severance Agreement does supersede the Kodiak RCA, then this case must be dismissed.[26]

2.      Adams's theory that the Northwest Severance Agreement supersedes the Kodiak RCA follows three steps. First, he asserts the Kodiak RCA, the Northwest RCA, and the Northwest Employment Agreement must be read together

---

[22] D.I. 35 at Ex. 1; *Northwest*, 2022 WL 1689293.

[23] *Northwest*, 2022 WL 1689293, at \*4–6.

[24] D.I. 37 at Ex. 1.

[25] *In re Pilgrim's Pride Corp. Deriv. Litig.*, 2019 WL 1224556, at \*11 (Del. Ch. Mar. 15, 2019) ("[W]hen parties agree to litigate in a particular forum, they consent implicitly to the existence of personal jurisdiction in that forum." (collecting cases)).

[26] *See Focus Fin. P'rs, LLC v. Holsopple*, 241 A.3d 784, 822–23 (Del. Ch. 2020).

6

as one agreement.[27] Second, he contends that the Northwest Severance Agreement supersedes the Northwest RCA and the Northwest Employment Agreement. The Colorado District Court concluded that this is so.[28] And third, Adams reasons that because the Kodiak RCA is read together with Northwest contracts superseded by the Northwest Severance Agreement, the Kodiak RCA is also superseded by the Northwest Severance Agreement. Following Adams's logic, the Northwest Severance Agreement's Idaho forum selection clause would supersede Kodiak RCA's Delaware forum selection clause, and deprive this Court of personal jurisdiction over Adams.

3.      Adams's first step (altering the Kodiak RCA's terms by reading it together with the Northwest RCA and Northwest Employment Agreement), and third step (superseding the Kodiak RCA with the Northwest Severance Agreement) are foreclosed by the Kodiak RCA's requirement that any amendments be in writing signed by the Parties, *i.e.*, Adams and Kodiak.[29] Kodiak negotiated for a strict express amendment procedure, requiring written authorization to depart from the Kodiak RCA's terms.[30] Adams offers no evidence of written amendments by

---

[27] D.I. 36 [hereinafter "Hr'g Tr."] 6.

[28] D.I. 35 at Ex. 1 at 9–10; *Northwest*, 2022 WL 1689293, at *5.

[29] Kodiak RCA § 13.

[30] *See Schillinger Genetics, Inc. v. Benson Hill Seeds*, 2021 WL 320723, at *15 (Del. Ch. Feb. 1, 2021); *IAC Search, LLC v. Conversant LLC*, 2016 WL 6995363, at *10 (Del. Ch. Nov. 30, 2016).

Kodiak. Kodiak is not a party to any of the Northwest contracts Adams contends amend the Kodiak RCA, so those Northwest contracts cannot serve as written amendments by Kodiak of the Kodiak RCA. And Adams offers no evidence of any other waiver by Kodiak.

4. Adams's effort to meld the Kodiak RCA with the Northwest RCA and Northwest Severance Agreement also fails. "Under Delaware law, the ordinary rule is that only the formal parties to a contract are bound by its terms."[31] Adams attempts to avoid this bedrock law by pointing to the clauses in the Kodiak RCA and Northwest RCA stating that the Kodiak RCA, the Northwest Employment Agreement, and the Northwest RCA "constitute the entire agreement between the Parties" as defined in each RCA.[32] He contends this language means the Kodiak RCA is to be read together with the Northwest Employment Agreement and Northwest RCA. But these provisions are straightforward entireties clauses or integration clauses.[33] They simply explain that the listed agreements are the final

---

[31] *Sheehan v. AssuredPartners, Inc.*, 2020 WL 2838575, at *9 (Del. Ch. May 29, 2020) (quotation marks and emphasis omitted) (quoting *All. Data Sys. Corp. v. Blackstone Cap. P'rs V L.P.*, 963 A.2d 746, 760–61 (Del. Ch. 2009), *aff'd*, 976 A.2d 170 (Del. 2009)).

[32] Kodiak RCA § 17; Northwest RCA § 17.

[33] *Kronenberg v. Katz*, 872 A.2d 568, 587 (Del. Ch. May 19, 2004) (referring to "Entire Agreement" clause as an "integration provision"); *Holsopple*, 241 A.3d at 797 (same); *The Chemours Co. TT, LLC v. ATI Titanium LLC*, 2016 WL 4054936, at *11–12 (Del. Super. July 27, 2016) (same); *Brace Indus. Contr., Inc. v. Peterson Enters., Inc.*, 2017 WL 2628440, at *2 (Del. Ch. June 19, 2017) (applying an "entireties clause"); 2 Bradley W. Voss, *Voss on Delaware Contract Law* § 8.119 (2021).

and total expression of the parties' terms, and preclude reliance on prior agreements, preliminary negotiations, conversations, and other parol evidence.[34] They do not serve to meld the listed agreements together, particularly when the agreements are not all between the same parties. Indeed, the Northwest RCA makes it plain that Kodiak's rights are not melded into that agreement; it identifies Kodiak, as part of a "Company Group," as a third-party beneficiary that can seek enforcement of the Northwest RCA, which it would not need to do if the Kodiak RCA were amalgamated with the Northwest RCA as Adams asserts.[35] Kodiak maintained its bargained-for rights in the Kodiak RCA, including its Delaware forum selection clause, notwithstanding the statement that the Kodiak RCA, Northwest RCA, and Northwest Employment Agreement are the entire agreements between the parties.

5. Further, by its plain language, the Northwest Severance Agreement's integration clause also does not reach the Kodiak RCA. It supersedes only "prior oral or written promises or agreements between the Parties."[36] Kodiak is not a Party to the Northwest Severance Agreement, so it does not supersede Adams's agreement with Kodiak.

---

[34] *See, e.g.*, *Carlson v. Hallinan*, 925 A.2d 506, 522–24 (Del. Ch. Mar. 21, 2006); *Brace*, 2017 WL 2628440, at *2 n.20.

[35] Northwest RCA § 18.

[36] Northwest Severance Agr. § 16.

9

6.     As an alternative to these three contractual steps, Adams asserts that Kodiak and Northwest are themselves collapsible.[37]  He points out that in each agreement, notice to Northwest should be provided to Kodiak; and that the same person executed the agreements on behalf of Northwest or Kodiak.[38]  Those observations fall far short of the high bar for blurring corporate separateness under Delaware law.[39]

7.     This Court has personal jurisdiction over Adams due to the Kodiak RCA's forum selection clause.  Adams's Motion is **DENIED**.  The parties should confer on a scheduling order for the remainder of the case.


_/s/ Morgan T. Zurn_
Vice Chancellor Morgan T. Zurn

---

[37] Hr'g Tr. at 14–15.

[38] OB 17.

[39] *See, e.g.*, *Lidya Hldgs. Inc. v. Eksin*, 2022 WL 274679, at *4 (Del. Ch. Jan. 31, 2022) (dismissing claims against counterclaim defendants where the counterclaimant ignored corporate separateness in giving notice to the counterclaim defendants' affiliates, but not the counterclaim defendants themselves); *Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1044 (Del. Ch. 2006) (reiterating "corporations have, as a presumptive matter, a separate legal existence irrespective of their common control"); *Skouras v. Admiralty Enters., Inc.*, 386 A.2d 674, 681 (Del. Ch. 1978) ("Absent a showing of a fraud or that a subsidiary is in fact the mere alter ego of the parent, a common central management alone is not a proper basis for disregarding separate corporate existence . . . ." (citing *Pauley Petroleum, Inc. v. Cont'l Oil Co.*, 231 A.2d 450 (Del. Ch. 1967), *aff'd*, 239 A.2d 629 (Del. 1968))).