**SINCLAIR CANADA OIL COMPANY, Plaintiff,**

v.

**GREAT NORTHERN OIL COMPANY, Defendant.**

Court of Chancery of Delaware.

New Castle.

Sept. 19, 1967.

S. Samuel Arsht, Walter K. Stapleton, Bruce H. Roberson and Adrienne Arsht, of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff.

Richard F. Corroon, of Potter, Anderson & Corroon, Wilmington, and Albert I. Edelman, of Javits, Trubin, Sillcocks, Edelman & Purcell, New York City, for defendant.

DUFFY, Chancellor:

In this action Sinclair Canada Oil Company, a Delaware corporation, ("Sinclair Canada"), seeks a judgment permanently enjoining Great Northern Oil Company, a Delaware corporation, ("Great Northern"), from doing any act in connection with an arbitration proceeding prior to final disposition of a lawsuit between the parties pending in a Canadian court. Sinclair Canada filed an action in the Court of Queen's Bench, Judicial Centre of Regina, in the Province of Saskatchewan, against Great Northern, which thereafter initiated the arbitration proceeding against Sinclair Canada before the American Arbitration Association in Minneapolis, Minnesota. This is the decision on Great Northern's motion for summary judgment.

I

The controversy arises out of a contract under which Sinclair Canada, a producer, sold crude oil to Great Northern at the wellhead in Canada. Great Northern thereafter transported the crude to St. Paul, Minnesota, where it was refined and marketed. Under Paragraph 6 of the contract the price of the crude is determined by a complex formula which provides for a cost per barrel delivered at the refinery in terms of crudes "laid down in the area of Chicago, Illinois", and

"provided that whenever Seller determines that substantial quantities of comparable crude flow into St. Paul by pipeline at a delivered cost at St. Paul to buyers on the open market which is lower or higher than the cost to buyers on the open market of the same or similar crudes delivered in the area of Chicago, the delivered cost of the reference crudes

as provided in this subsection will be determined for St. Paul instead of for Chicago, and only comparable reference crudes which move into St. Paul by pipe line will be used (if there be less than three such crudes, all will be selected), it being the intention of Buyer and Seller that GREAT NORTHERN's Cost of Crude delivered at the Refinery for crude oil sold and delivered hereunder shall be competitive with the delivered cost by pipeline in the St. Paul area to other buyers on the open market of crude oil of substantially similar quality and gravity."

Paragraph 7(a) places a duty of price certification upon the Seller, saying:

"Seller shall, on or before the tenth day of each calendar month, mail to Buyer a complete written statement of the amount due, showing the quantities and gravity of each grade of crude delivered during the preceding calendar month, together with a certification of the amount and effective dates of any changes in any of the factors * * *"

affecting price.

The agreement specifically provides for arbitration of price escalation, saying, at Paragraph 6(e):

"All prices and price factors under this Section 6 shall be effective as certified by Seller to Buyer in accordance with subsection (a) of Section 7, provided, however, that within sixty (60) days after receipt of such certification Buyer may give notice to Seller that Buyer desires to have the amount of any price escalation under subsection (b) hereof submitted to arbitration."

Arbitration is called for in Paragraph 11(a), which reads:

"Any controversy or claim arising out of, or relating to this Contract or the alleged breach thereof shall be settled by arbitration according to law pursuant to the Rules then obtaining of the American Arbitration Association and judgment upon the award so rendered may be entered in any court having jurisdiction thereof, except that whenever prices or price changes arising under subsection (e) of Section 6 are to be arbitrated one (1) arbitrator shall be used and must be a person who is acceptable to Seller and Buyer, who is of at least ten (10) years experience in the petroleum business and who is in no way connected with any party or in any way interested in the subject matter of this Contract. If the parties fail promptly to agree on the arbitrator or arbitrators, the American Arbitration Association shall select same in accordance with its Rules."

After several years performance under the contract the parties disagreed as to price. In 1961 Great Northern sought to invoke that part of the agreement which provides for price in terms of delivered cost "for St. Paul instead of for Chicago". There was disagreement as to whether "substantial quantities of comparable crude" were flowing into the former city and Sinclair Canada took the position that the facts did not warrant a price reduction under the contract. Thereafter, Great Northern continued to make payment for the crude oil on the same basis as it had before.

In July 1963 Great Northern again requested a price reduction which Sinclair Canada refused to make. To this point, neither party had requested arbitration, nor had either side filed any lawsuit. But effective about July 1, 1963, Great Northern reduced each payment for crude to the posted field price, which was less than the contract price certified by Sinclair Canada. In September 1963 Sinclair Canada made demand that the remaining portion of the certified price be paid. It was not paid. Sinclair Canada continued to make deliveries, Great Northern continued to make payments at the reduced rate until at least February 28, 1966. And to that date neither party had gone to arbitration or to law. But

the parties had differed as to who had the responsibility for demanding arbitration (under circumstances where Sinclair Canada was certifying one price and Great Northern was paying another).

In any event, Sinclair Canada began the Canadian suit on April 12, 1966, seeking a judgment for what it contended was the unpaid portion of the purchase price between July 1, 1963 and February 28, 1966. In that suit Great Northern sought a stay on the ground that it had a right to arbitration. The Canadian Court refused to grant the stay, but Great Northern, on August 9, 1966, made the demand for arbitration by a formal filing with the American Arbitration Association in Minnesota.

In its formal demand for arbitration, Great Northern contended that it overpaid Sinclair Canada for purchases of crude oil from November 1, 1960 to June 30, 1963 and sought return of the overpayments with interest; it also denied any obligation to Sinclair Canada for deliveries made after June 30, 1963.

## II

While unit price and a determination of what moneys are owed each party by the other are ultimate issues, it must be emphasized that neither side looks to this Court for such decisions. Those questions have been put by Sinclair Canada to the Canadian Court and/or by Great Northern to the Arbitration tribunal. The sole issue presented in this suit between Delaware corporations is whether the Court should require one of them, Great Northern, to go no further in a Minnesota arbitration proceeding until a prior pending Canadian lawsuit has ended. We are not concerned with the merits of the controversy and indeed our only contact with it is the residency of the corporations. In effect, this Court is asked to establish by use of its injunctive power an order of precedence in which the Minnesota arbitration proceeding would follow only after termination of the Canadian suit. Compare Pauley

Petroleum. Inc. v. Continental Oil Co., Del. Ch., 231 A.2d 450 (1967).

Preliminarily, I should note that the view I take of the case is somewhat different than that of Great Northern. A substantial part of its main brief was directed to the proposition that the Federal Arbitration Act created Federal substantive law binding the transaction, the parties and this Court; it also contended that *res judicata*, collateral estoppel, and comity are not applicable. Sinclair Canada responded to that argument by pointing out that its case does not rest upon those issues and they need not be decided by this Court in order to dispose of Great Northern's motion. Sinclair Canada stated its legal position affirmatively and Great Northern replied thereto.

In deciding the case, I have examined it upon the two propositions which Sinclair Canada advances in support of its position. (Specifically, Sinclair Canada said that its case does not rest upon the nature and effect of the decision which the Canadian Court has made, although it did respond to Great Northern's arguments about the Federal Act, *res judicata*, and the like.) If I am mistaken as to Sinclair Canada's position, it is invited to call that to my attention by way of a motion for reargument.

Sinclair Canada states that:

(1) The legal proposition on which its action is based is that "a court of equity has jurisdiction and power to enjoin a person within its jurisdiction from prosecuting a proceeding in another forum involving the same issues as are already before a court of competent jurisdiction and that it will exercise that power to prevent vexation and harassment of a party by duplicative litigation"; and

(2) Great Northern's conduct prior to the institution of the Canadian action provides an additional basis for the exercise of the conscience of equity.

## III

■ Both parties are Delaware corporations, and this Court's power to act *in personam* upon Great Northern by directing it to proceed no further in the arbitration is conceded. Cole v. Cunningham, 133 U.S. 107, 10 S.Ct. 269, 33 L.Ed. 538 (1889). But the exercise of that power is ordinarily governed by such factors as (a) the duty of a court to protect its jurisdiction over a controversy in order to do complete justice; or (b) the existence of a quasi in rem proceeding in the court where injunctive relief is sought; (c) an attempt by a resident to sue another resident in a foreign state in order to avoid application of their home state law; or (d) the imposition of an unconscionable hardship by one resident upon another through the foreign suit. 6 A.L.R.2d 896, 901.

This listing does not exhaust the grounds upon which equity will act to enjoin the prosecution of a subsequent proceeding in a foreign tribunal, but it does point up the absence of similar equitable considerations in the case which Sinclair Canada argues here. And some of the decisions upon which it relies underscore that absence.

In *Cole,* supra, the Massachusetts decree was issued to prevent evasion of its own laws; and in Connecticut Mut. Life Ins. Co. v. Merritt-Chapman & Scott Corp., 19 Del.Ch. 103, 163 A. 646 (1932), this Court acted to prevent a party from removing from its jurisdiction a controversy already here. Neither factor is present in this case. As to Crosley Corporation v. Hazeltine Corporation, 122 F.2d 925 (3 Cir.1941), Cert. den. 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211 (1942), that case apparently initiated a policy or practice in the Federal Courts under which the first District Court to obtain jurisdiction over a controversy will determine it and will enjoin the parties from prosecuting a subsequently initiated suit in another district, absent special circumstances. But that is by no means a rigid rule; an ample degree of discretion remains in the trial court. Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952); Small v. Wageman, 291 F.2d 734 (1 Cir. 1961).

The rule of *Crosley* undoubtedly tends to eliminate economic and judicial waste and so has much to commend it within the Federal system. And Leesona Corp. v. Cotwool Mfg. Corp., Judson Mills Div., 315 F.2d 538 (4 Cir.1963), is an extension of the rule within the same system. There the decree restraining arbitration was upheld as "auxiliary to the defense of the licensor's suit". It seems quite clear that the District Court suspended further proceedings before *it and* stayed arbitration sought by the same licensor because an action pending in another Federal court might simplify or settle issues (patent and infringement). Compare Lanova Corporation v. Atlas Imperial Diesel Engine Co., 5 Terry 593, 64 A.2d 419 (1949). For the reasons I have already indicated, a decision by the Canadian Court will not settle any issues litigated here.

This leads to the question of unconscionable hardship. As to this, Sinclair Canada contends that the arbitration proceeding is vexatious and harassing. But the only such qualities charged or shown in the present record are those which may be incident to the demand for and (intended) prosecution of the arbitration proceeding by Great Northern. In short, it is contended that the very nature of the duplicative litigation is vexatious and harassing.

In my judgment, the claim for equitable relief which Sinclair Canada seeks here is without precedent in any of the authorities or cases on which it relies. I say this because the same parties are before two different tribunals in a dispute over the same contract, and now a *third* tribunal, this Court, is asked to apply its injunctive power to settle priority in the other two.

And the only equitable bases on which this is sought are (a) residency of the parties and (b) a charge of harassment by the second filing.

■ On balance, I conclude that neither residency alone nor in combination with the duplicative nature of the arbitration proceedings (which Sinclair Canada argues) and any harassment incident to them is such as to persuade me that the Court should issue the injunction upon the legal propositions which Sinclair Canada makes. I say this for several reasons which I outline briefly:

(1) The contract by its terms (Paragraph 11 (a)) permits (if it does not require) arbitration, and under Federal law a written provision in a contract evidencing a transaction involving commerce to settle a controversy by arbitration is valid and enforceable. 9 U.S.C.A. § 2. For present purposes I need go no further than to note the Federal Act and the arbitration provision of the Contract. In light of them, I cannot conclude that initiation of the arbitration, given all the preliminaries while deliveries of crude were being made, constitutes harassment which this Court should enjoin.

(2) The issues proposed in the arbitration proceedings are broader than those submitted to the Canadian Court because the latter involve only sales made after July 1, 1963, while the former also cover a prior period back to November 1, 1960.

(3) An injunction in this case would be, as Sinclair Canada implicitly argues, in the nature of a stay of the arbitration (acting, of course, upon a party and not upon the Association or the panel), and, were it to issue, this Court might well be called upon to monitor the progress of the Canadian litigation because discharge of the injunction would be related to it. And such discharge would free for processing, not matters on our docket, but those in a Minnesota arbitration tribunal. It is that

key difference which distinguishes this from cases like General Foods Corporation v. Cryo-Maid, Inc., 41 Del.Ch. 270, 194 A.2d 43; aff'd 41 Del.Ch. 474, 198 A.2d 681 (1964); and from Landis v. North American Co., 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936). On the present record, at least, I think this Court should not undertake the kind of long-distance regulation which Sinclair Canada seeks.

(4) Simultaneous proceedings, while undesirable, are not necessarily bad per se. Compare Chadwick v. Gill, 16 Del.Ch. 127, 141 A. 618 (1928); Donovan v. City of Dallas, 377 U.S. 408, 415, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964); Penn General Casualty Co., v. Commonwealth, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935).

IV

■ Sinclair Canada also argues that Great Northern's conduct prior to institution of the Canadian action provides an additional basis for the exercise of the conscience of equity. This is based on a letter written by Great Northern's counsel to Sinclair Canada before the latter filed suit in Canada; the letter states:

"In suggesting that it is up to your client to proceed we do not mean to waive any rights that our clients may have to contest the timeliness of any request for arbitration in view of the 60 day provision of Section 6(e) of the Fosterton Contract."

I regard this as part of the pre-suit dialogue in which the parties were struggling for position. Thus it was said, " * * * we do not * * * waive any rights * * * our client may have to contest the timeliness of any request for arbitration * * *." Whatever label may best fit this phrasing and whatever materiality it may have for waiver purposes before an arbitrator, I do not regard it as persuasive upon the injunctive question, whether sinly or in combination with other factors.

## V

As I have already indicated, it is not necessary, in denying Sinclair Canada's claim for relief, that this Court affirmatively find that Great Northern is entitled to have the dispute arbitrated. In saying this I particularly note that Sinclair Canada seeks only to enjoin prosecution of the arbitration until final disposition of the Canadian action; I do not have before me the question of Great Northern's right under the contract to arbitrate at sometime in the future.

Finally, it should be emphasized that in granting a summary judgment for Great Northern, I have not been called upon to determine what respect or effect should be given to the judgments made thus far by the Canadian Court. And this is so whether one looks at them from the point of *res judicata*, collateral estoppel or comity. I decide only that under the law which I have considered this Court should not apply its injunctive powers to give Sinclair Canada the equitable relief it seeks.

Great Northern's motion for a summary judgment will be granted.