AIR PRODUCTS AND CHEMICALS, INC., a corporation of the
State of Delaware,
Plaintiff,

*vs.*

THE LUMMUS COMPANY, a corporation of the State of Delaware,
Defendant.

*New Castle, November 3, 1967.*

*Walter K. Stapleton,* of Morris, Nichols, Arsht & Tunnell, Wilmington, and *K. Robert Conrad,* of Pepper, Hamilton & Scheetz, Philadelphia, Pa., for plaintiff.

*H. James Conaway, Jr.,* and *Edward B. Maxwell, 2nd,* of Young, Conaway, Stargatt & Taylor, Wilmington, and *George P. Williams, III,* of Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant.

MARVEL, Vice Chancellor: Plaintiff is the successor to Houdry Process Corporation[1], and is the owner, developer and designer of specialized catalytic oil cracking and oil reforming processes which it licenses to oil refining companies. Plaintiff's principal place of business is located in Philadelphia, Pennsylvania, while defendant, which has been for many years a designer and builder of oil refineries and chemical plants, maintains its principal place of business in New York, New York. Both plaintiff and defendant are Delaware corporations.

On July 19, 1954, Houdry entered into a contract with defendant under the terms of which the former agreed to design specified oil cracking and reforming units for installation and operation in a refinery to be constructed by defendant for Commonwealth Oil Company in Ponce, Puerto Rico. On March 14, 1956, a second contract was entered into between the parties under the terms of which Houdry agreed to prepare additional designs for units to be installed in an extension of the original refinery. In its contractual dealings with defendant plaintiff agreed to prepare necessary drawings concerning its processes as well as to furnish process data with the understanding that such processes were to be licensed to Commonwealth for use in the Puerto Rico plant being built for the latter by defendant, the actual construction and extension of the refinery in question being a matter of contract between the defendant as builder and Commonwealth Oil Company as owner and operator of the refinery. According to plaintiff, the contracts in question were entered into in New York, while the designs and specifications for the equipment involved were prepared in plaintiff's facilities in Philadelphia. When completed, the

---

1. The contractual undertakings here involved having taken place prior to Houdry's merger into Air Products and Chemicals, Inc., the name Houdry will be used interchangeably with plaintiffs.

designs and specifications in question were, according to plaintiff, delivered to defendant in New York. The contracts provided that plaintiff would supply "advisory start-up operators" for the units involved, the operators in question being assigned from among plaintiff's personnel on duty in Philadelphia, Pennsylvania.

Allegedly seeking to recover the costs of supplying such advisory operating personnel pursuant to the contractual undertakings of the parties, plaintiff instituted a suit in the Superior Court of New Castle County on September 8, 1967, for the recovery of such alleged costs in the amount of $131,859.52. Such Delaware complaint also sought a declaratory judgment absolving plaintiff from alleged liability to defendant in the amount of $9,976,921, plus interest of $3,600,000, the amount which defendant has demanded from plaintiff for its alleged breaches or faulty performance in the preparation of designs and specifications called for in the two contracts entered into by the parties in 1954 and 1956. In addition to denying liability to defendant under the contracts in question, plaintiff contends in its Superior Court action that defendant's claim is barred "* * * by the applicable statutes of limitations * * *", or by two judgments, one entered in New York and the other in Puerto Rico, in November 1960, as a result of litigation between Houdry and Commonwealth Oil Corporation.

Plaintiff alleges that it is defendant's intention, and defendant concedes such to be a fact, that if and when permitted to do so, defendant will file suit against plaintiff in Puerto Rico for the collection of the damages which it claims.

It is plaintiff's contention that defendant's motive in seeking to be relieved of the present temporary order, which enjoins it from suing in Puerto Rico, is to be in a position to harass and vex plaintiff with a duplicate of plaintiff's declaratory judgment action now pending in this jurisdiction in a forum which is distant from the Philadelphia area where the witnesses and other sources of evidence which will be required to establish plaintiff's case are located.[2] In addition, plaintiff stresses the fact that counsel most familiar with the parties' opposing claims practice in the New York and Philadelphia area and that the

2. In this connection plaintiff notes that alleged Puerto Rico witnesses referred to in the Hallinan affidavit of September 26, 1967 are all employees of Commonwealth Oil Company.

expense of transporting counsel, witnesses and documentary evidence to a trial in Puerto Rico would be exorbitant. Plaintiff further contends that defendant's threatened suit in Puerto Rico is an attempt "* * * to avoid the statute of limitations of the jurisdiction in which its alleged claim arose."

A temporary restraining order was entered herein after argument on September 11, 1967 enjoining defendant from instituting or prosecuting any action arising out of the 1954 and 1956 contracts between the parties other than the one now pending in the Delaware Superior Court. A rule to show cause why a preliminary injunction in conformity with the restraining order having been returned and argued, this is the opinion of the Court on the question as to whether or not a preliminary injunction should issue against defendant as prayed for.

█ The law of Delaware as to the power of this Court to enjoin a defendant in a Delaware Chancery action from drawing the subject of the Delaware complaint to a jurisdiction of his own choosing is clear.

> "It is true that where a court of equity has jurisdiction of the parties and the subject matter of a suit, it will prevent the defendant from removing the controversy to another jurisdiction through the device of a suit later instituted in such other jurisdiction. *Connecticut Mutual Life Ins. Co. v. Merritt-Chapman & Scott Corporation,* 19 *Del.Ch.* 103, 163 *A.* 646; *Gray Co. v. Alemite Corporation,* 20 *Del.Ch.* 244, 263, 174 *A.* 136, 143. This rule is in the interest of the due and orderly administration of justice and of the integrity of judgments and decrees. 32 *C.J.* p. 88." *Peyton v. William C. Peyton Corp.,* 21 *Del.Ch.* 299, 187 *A.* 849.

This principle has recently been restated in *Pauley Petroleum, Inc. v. Continental Oil Company (Del.Ch.)* 231 *A.2d* 450. See also *Sinclair Canada Oil Company v. Great Northern,* 233 *A.2d* 746. (Ct. of Ch.) Sept. 19, 1967.

█ However, the *Peyton* case is authority for the proposition that such injunctive power should not be exercised in a situation (not claimed to be present here) in which, because of lack of jurisdiction over all of the parties in interest, the Delaware Court is powerless to

render a decree finally and completely disposing of the matters in controversy. It also appears to be the law generally that notwithstanding the clear power of a court of plaintiff's choice to enjoin a second suit where full relief can be granted in the first suit, such power should be exercised cautiously.[3] Annotation, 6 *A.L.R.2d* 896. Compare *Gray Company v. Alemite Corporation, supra.*

In the background of the Delaware litigation now pending between plaintiff and defendant lies a long history of litigation having to do with alleged deficiencies in the design, construction and extension of the Commonwealth Oil refinery at Ponce, Puerto Rico. Both plaintiff and defendant have each been involved in two law suits in which Commonwealth was the adversary. Such suits, as this one, developed a bitter dispute as to the proper forum for trial of the matters in issue, and in connection with one phase of this long drawn out litigation, the president of the Lummus Company, as of 1959, stated in an affidavit in support of this company's efforts to have its dispute with Commonwealth arbitrated in the New York Supreme Court rather than tried in Puerto Rico, that the construction of the plant in question had not in fact been performed by Lummus but rather built under subcontract to a Lummus subsidiary, and that Lummus did not have and never had had an office in Puerto Rico. Such deponent further stated under oath that substantially all of the design and engineering work and substantially all of the procurement of materials and equipment for the Commonwealth plant at Ponce, Puerto Rico, took place in New York. Such affidavit, in referring to Houdry's part in the design of basic units for the plant, stressed the point that such corporation had not maintained offices or a place of business in Puerto Rico and averred that substantially all of the individuals connected with Commonwealth whose testimony would be relevant to the controversy over the construction of the refinery in question were non-residents of Puerto Rico. And while the past disputes between Lummus and Commonwealth, as well as those between Houdry and Commonwealth, did not, of course, involve identical

---

3. The rule giving exclusive jurisdiction to the court which first obtains possession of a controversy has been said to have its foundations not merely in comity, but in necessity: "For, if one may enjoin, the other may retort by injunction, and thus the parties be without remedy; being liable to a process for contempt in one if they dare proceed in the other". *Central National Bank v. Stevens,* 169 *U.S.* 432, 459, 18 *S.Ct.* 403, 42 *L.Ed.* 807.

causes of action, nonetheless the same plant which was the cause of both sets of such prior litigation is the subject of this litigation.

Plaintiff has here made a choice of forum, a selection which defendant apparently hopes to frustrate by drawing the litigation to Puerto Rico. I believe that on the present record plaintiff has established not only a probability of ultimate success in its attempt to force defendant to litigate their differences in a forum more accessible than Puerto Rico, but has also established that the equities concerning a choice of forum are clearly on plaintiff's side. Compare *Kolber v. Holyoke Shares, Inc.* (*Del.Sup.Ct.*) 213 *A.2d* 444. Furthermore it must be noted, at this juncture, that plaintiff is not adamant about the choice of what would appear to be an appropriate forum and will not take steps to frustrate the orderly development of a suit recently instituted by Lummus against plaintiff in Pennsylvania. In fact, according to its counsel, plaintiff would not oppose the selection of a New York court as a forum in which the present litigants' controversies might appropriately be resolved.

In short, at this stage, I see no justification for defendant's proposed Puerto Rico suit, a choice of forum diametrically opposed to that taken by defendant in earlier litigation instituted by Commonwealth Oil Company concerning the very plant involved in this litigation. And while the Delaware authorities cited earlier in this opinion would appear to countenance injunctive relief in any case where an effort is made to draw the subject matter of a previously filed Delaware complaint to a foreign jurisdiction, defendant's proposed suit here would not only run contrary to such precedents but would draw to a foreign forum, at substantial expense to both litigants, a large amount of documentary evidence as well as numerous witnesses presently employed in either the Philadelphia or New York area.

May this Court, however, enjoin a Delaware defendant in a Superior Court action from proceeding to file suit in Puerto Rico, there being no relief sought in this Court other than injunctive relief against such second action?

Because the Delaware constitutional trial courts have been divided into separate courts of law and equity since the adoption of the first Delaware Constitution in 1792, a litigant seeking injunctive

relief in aid of a suit at law must necessarily resort to equity for relief. And in applying for equitable relief in such a situation, it would appear to make no difference whether such relief is sought against the further prosecution of a domestic law suit. *Bayard v. Martin,* 34 *Del.Ch.* 184, 101 *A.2d* 329, or, when warranted, a suit in a foreign jurisdiction, *Pauley Petroleum, Inc. v. Continental Oil Co., supra.* Compare *State v. Gulf Sulphur Corporation (Del.Sup.Ct.)* 231 *A.2d* 470.

In the case of *Sinclair Canada Oil Company v. Great Northern, supra,* however, there was no Delaware proceeding pending concerned with the merits of the controversies being litigated between the Chancery adversaries elsewhere. Accordingly, the Chancellor declined to grant injunctive relief against the prosecution of litigation outside of Delaware, the litigants' only connection with Delaware being the fact that both were incorporated under its laws.

Finally, defendant argues that unless it is permitted to proceed against plaintiff in Puerto Rico, it will be improperly deprived of a claimed right to rely on a statute of limitations of such Commonwealth, the terms of which allegedly preserve defendant's claims against plaintiff. No showing is made, however, that the bar of such statute is about to fall. I conclude that the expense and costs which would necessarily be suffered by plaintiff were injunctive relief not continued is not counterbalanced by any benefit to plaintiff now to be gained by it in the filing of a suit in Puerto Rico.

On notice, an order may be presented preliminarily enjoining defendant from seeking to draw to a foreign jurisdiction the subject matter of its claims against plaintiff which are based on the latter's alleged breaches or faulty performance of the agreements entered into between the parties on July 19, 1954 and March 14, 1956 having to do with a refinery to be built for Commonwealth Oil Refining Company in Ponce, Puerto Rico.